# RYAN v. STATE.

## (*Jackson.*  July 22, 1896.)

1. CRIMINAL PRACTICE. *Weight of Judge's findings on motion for new trial.*

   The well-settled rule that the Judge's findings upon controverted questions of fact, arising upon a motion for new trial, shall have the weight of the verdict of a jury, has no application where the findings are not general, but specific, and disclose upon their face good cause for granting a new trial. (*Post, pp. 208–212.*)

2. NEW TRIAL. *Granted for misconduct of juror.*

   A new trial will be granted where it is shown that one of the jurors, during the progress of the trial of a murder case, stated in the presence of his fellow jurors that he had been member of a grand jury that had indicted defendant for felonious assault, and that the proof before the grand jury showed that defendant struck the person assaulted from behind with a heavy wrench, while he was stooping, and that defendant was a bad or dangerous man, although the other jurors swear they were not influenced by these statements. (*Post, pp. 208–213.*)

   Cases cited and approved: Sam v. State, 1 Swan, 63; Morton v. State, 1 Lea, 499; Whitmore v. Ball, 9 Lea, 35; Donston v. State, 6 Hum., 275; Boobie v. State, 4 Yer., 111; Wade v. Ordway, 1 Bax., 229; Nile v. State, 11 Lea, 694; Cranford v. State, 2 Yer., 60.

3. WITNESS. *Cross-examination of, as to criminal charges.*

   Upon cross-examination of a defendant in a criminal case, or of any other witness, he may be asked, for purposes of impeachment, if he has not been indicted for certain criminal offenses, and upon objection of his counsel that the best evidence should be offered, it is not error to admit the records of the indictments. (*Post, pp. 213–216.*)

   Cases cited and approved: Braswell v. State, 3 Leg. Rep., 283; Hill v. State, 91 Tenn., 521.

4. SAME. *Same. Denial of charges permitted.*

A witness admitting, on cross-examination, that he has been indicted, has the right to state in general terms whether he is guilty or innocent of the charges, and whether he has been tried and acquitted, but he cannot go into details. (*Post, pp. 214, 215.*)

5. SAME. *Same. Withdrawal of charges, when.*

Where it develops that a witness, admitting criminal charges by indictment on his cross-examination, was acquitted, or that the charges against him were abandoned, the Court should exclude the evidence entirely, and direct the jury to disregard it. (*Post, pp. 215, 216.*)

Case cited and approved: Hill v. State, 91 Tenn., 521.

---

### FROM SHELBY.

---

Appeal from Criminal Court of Shelby County. L. P. COOPER, J.

ELDRIDGE E. WRIGHT for Ryan.

Attorney-general PICKLE for State.

MCALISTER, J. The prisoner was convicted in the Criminal Court of Shelby County of murder in the second degree, and sentenced to the penitentiary for a term of ten years. Since the judgment of the lower Court must be reversed for errors committed in the conduct of the trial, we pretermit any discussion of the facts.

The first assignment of errors we will notice is

based upon the misconduct of the jurors. It was shown, upon the motion for a new trial, that one Reasonover, one of the jurors who tried the case, had stated at some time during the progress of the trial, in the presence of several other jurors, that he, Reasonover, was a member of the grand jury when the defendant, Ryan, had been indicted for an attempt to commit murder upon one Kehoe, and that the facts of that case were, that Ed. Ryan, the defendant, went up behind Kehoe, who was stooping over a waterpipe, and hit him with a heavy wrench, and that case was still pending in the Criminal Court. It was also shown that, at another time, Reasonover had stated to some of the jury that Ed. Ryan was a bad man, or a dangerous man to the community, or words to that effect, the exact language not being remembered.

The Court, it appears, had permitted the Attorney-general to ask the defendant, on cross-examination, if he had not been indicted for an assault on one Kehoe. Counsel for defendant objected to this question. The objection was overruled by the Court. Thereupon counsel for defendant demanded the best evidence of this charge, whereupon the Attorney-general introduced the original indictment, which charged that Ryan had premeditatedly, willfully, maliciously, and feloniously made an assault upon the body of Kehoe, with intent to commit murder in the first degree. The Circuit Judge, in his disposition of the question of the misconduct of the juror,

Ryan *v.* State.

stated there was no material difference between the language used in the indictment, which was properly in evidence, and the language used by the juror, which is made the subject of criticism and the basis of a new trial.

The Circuit Judge also found that the remarks of Reasonover in respect of the assault of Ryan upon Kehoe, was not made after the jury retired to consider their verdict, but was casually made some time during the progress of the trial, and was not heard by all the jury, and was not made when they were discussing the question ·of the guilt or innocence of the defendant, but was made by Reasonover when he was reciting to his fellow jurors his reasons for not wishing to serve upon the jury. The Circuit Judge also states, in his opinion, that all the other jurors who tried the case were examined before the Court, and, without exception, testified that the statement casually made by Reasonover as to the assault made by the defendant upon Kehoe, did not in the least affect their opinions as to the innocence or guilt of the defendant.

The Court also found that the evidence that Reasonover stated to some of the jury that Ryan was a dangerous man to the community, or words to that effect, is very indefinite and unsatisfactory. Says the Court: "The affidavit [of Monteith, one of the jurors] does not fix the time when this language was used by Reasonover, and Monteith fails to state, when a witness on the stand, that Reason-

over used this language, but, on the contrary, says, that while the question as to the admissibility of the evidence of other indictments against Ryan was being argued before the Court, he drew the conclusion, from what Reasonover said, that Ryan was a bad man. Some of the other jurors, in an indefinite way, did say that they heard some such language as that used, without fixing the time, but none of them say that it was used while they were considering the evidence in the case as to the guilt or innocence of the defendant. Reasonover himself denies using such language," etc.

The Court continues: "The evidence of Reasonover upon this point is not contradicted by any other evidence in the case, nor is there any evidence in the case showing that any such language was used, if used at all, except at the time fixed by Mr. Reasonover, to wit, when the question as to the admissibility of these indictments against Ryan for other crimes was being argued before the Court. There is no evidence that any such language was used in the jury room after the case had been closed and was given to the jury under the charge of the Court to consider of their verdict, upon the guilt or innocence of the defendant," etc.

"Upon all the evidence the Court is of opinion that while there was some irregularity and perhaps improper talk on the part of Reasonover before the case was finally submitted to the jury for their consideration as to the guilt or innocence of the de-

fendant, yet the court is of the opinion that nothing occurred that was calculated improperly to influence the verdict of the jury or that was calculated to prejudice the jury against the defendant in rendering their verdict upon the law and evidence in the case.''

While the rule is well settled that the finding of a Circuit Judge upon controverted questions of fact arising upon a motion for a new trial is equivalent to the verdict of a jury, and will not be disturbed if supported by any material evidence, the rule is inapplicable when the written findings of the Circuit Judge upon the motion are set out in the record, and show affirmatively that a new trial should have been granted.

T. J. Reasonover, the juror charged with the misconduct, admitted, in his examination on motion for a new trial, that he stated in the presence of several jurors, during the progress of the trial, that he was a member of the grand jury that indicted defendant, Ryan, for the assault upon Kehoe, and the proof before the grand jury was that Kehoe was stooping, with his head down, and Ryan struck him with a monkey wrench. Several jurors testified that Reasonover used this language in their presence.

We think such statements must have been highly prejudicial to the defendant, and nothing is better settled than that they invalidate the verdict of a. jury. Proof of such a collateral issue would have been wholly inadmissible if the witness had been

offered before the Court under the sanction of an oath and with an opportunity given the defendant for cross-examination. The Circuit Judge was of opinion that, because these statements were made before the defendant had introduced any evidence, and not after the jury had been charged and had retired to consider their verdict, they were innocuous. It is wholly immaterial at what stage of the trial the statements were made. It was testimony Reasonover had no right to give and the other jurors no right to hear, and vitiated the verdict, no matter when given. As stated by Judge Mc-Kinney in *Sam* v. *State*, 1 Swan, 63, the verdict of a jury must be founded upon the evidence delivered to them in Court in the presence of the Judge and of the parties. And, as a consequence necessarily flowing from this doctrine, the rule was established at an early day that, if a juror possessed any knowledge in respect to the matter in issue as to which he might testify, he must be sworn as a witness and give his testimony openly in Court as other witnesses. Such has been the long-established and inflexible rule, to which no exception can be admitted, either in a civil or criminal case. In criminal cases, more emphatically, there can be no exception under our laws, because among other rights absolutely secured by the Constitution to the accused in all criminal prosecutions, is the right to meet the witnesses face to face.

Again, the Circuit Judge, in his finding, lays

stress upon the fact that all the "other jurors were examined, and, without exception, testified that the statements made casually by Reasonover as to the assault made upon Kehoe by the defendant, Ryan, did not in the least affect their opinions as to the guilt or innocence of defendant."

On this subject, Judge McKinney, in the case last cited, said, viz.: "The statement of the juror that the facts disclosed in the jury room produced no effect upon his mind and he thought none upon the minds of the other jurors, is to be taken with great allowance. . . . But to vitiate the verdict in this case, the proof is not upon the prisoner to show affirmatively that he was prejudiced by the improper evidence received by the jury. It is enough that he may have been prejudiced, and the law will so presume." *Morton* v. *State*, 1 Lea, 499 ; *Whitmore* v. *Ball*, 9 Lea, 35 ; *Donston* v. *State*, 6 Hum., 275 ; *Boobie* v. *State*, 4 Yer., 111 ; *Wade* v. *Ordway*, 1 Bax., 229; *Nile* v. *State*, 11 Lea, 694; 2 Yer., 60.

The second assignment is based upon the action of the trial Judge in admitting in evidence indictments against the defendant for other and distinct crimes. The Court admitted this evidence as affecting the credibility of the defendant in his capacity as a witness, and instructed the jury it could not be considered on the subject of his guilt or innocence of the charge for which he was on trial. It is insisted, however, by counsel for defendant that

this evidence was not admissible for any purpose. The Attorney-general, on cross-examination, asked the defendant how often he had been indicted in that Court. Defendant's counsel objected, on the ground that the question did not tend, legitimately, to impair the credibility of the witness, and that a defendant in a criminal case cannot be compelled to answer, on cross-examination, whether he has been indicted for an offense other than that for which he is on trial. The Court overruled the objection, but stated to the jury that the testimony offered was only admissible in affecting the credibility of the witness.

Defendants' counsel then interposed the further objection to the testimony, that it was not the best evidence, but that said indictments should be proved by the records. And, thereupon, the records were read, showing several indictments against the defendant, including both felonies and misdemeanors.

In the case of *Braswell* v. *The State*, 3 Leg. Rep., 283, it was ruled by this Court, that when the answer to a question does not render the witness liable to penalties or a criminal prosecution, and does not directly and certainly show his infamy, but only tends to disgrace him, or to expose his unreliability as a witness, he may be compelled to answer, and that, under this rule, it was competent to ask the witness if he had not been indicted for counterfeiting. This rule was reaffirmed by this Court in *Hill* v. *State*, 7 Pick., 521.

There was no error in asking the witness, on

cross-examination, if he had not been indicted for "other felonies and misdemeanors; and upon objection from defendant's counsel that the best evidence should be offered, it was competent to offer the record of the indictments. The Court then permitted defendant to say whether he was innocent or guilty of those charges and whether he had been tried or acquitted, but refused to allow him to go into an explanation or rehearsal of the details of each particular offense. In this we think there was no error. Such a practice would involve interminable investigations of collateral issues, confuse the minds of the jury, and result in extravagant consumption of the public time and revenues. We think, however, the Court was in error in permitting the jury to consider for any purpose records of indictments in cases in which the defendant had been acquitted or a *nolle prosequi* had been entered by the Attorney-general. When it was developed by the records that the defendant had been acquitted of some of the charges and that other indictments against him had been dismissed, the Court should have withdrawn the evidence and instructed the jury to disregard it. It was ruled in *Hill* v. *State*, 7 Pickle, "that the defendant's denial of the truthfulness of the independent charge against him should have ended the matter to all intents and purposes. The jury should not have been allowed to consider the collateral charge in any way, as affecting his credibility or otherwise." So, we think in this case, for a

stronger reason, when it was shown that the defendant had been acquitted or discharged from custody on a particular charge, the jury should have been instructed that such indictments were not to be considered by the jury for any purpose. For the errors indicated the judgment 'is reversed and the cause remanded for a new trial.