## BEN PERCER *v.* STATE.*

[(*Jackson.* April Term, 1907.)

1. **NEW TRIALS.** **Weight of findings of fact by trial judge upon motion for new trial.**

It is well settled in criminal as well as in civil cases that upon a motion for a new trial involving questions of fact, the findings of the trial judge will not be disturbed upon appeal if there is any material evidence to support them. (*Post, p.* 773.)

Cases cited and approved: Ryan v. State, 97 Tenn., 211; Thomas v. State, 109 Tenn., 684.

2. **CRIMINAL LAW.** **Presence of accused required during entire trial on charge of a felony.**

It is a fundamental and constitutional right guaranteed the accused on trial for his life or liberty to be present during the whole trial; and it is well settled that it is essential to a valid trial and conviction on a charge of felony that the accused shall be present, not only when he is arraigned, but at every subsequent stage of the trial, unless he may and does waive his right to be present, as in proceedings which are no part of the trial, but merely preliminary or subsequent thereto. (*Post, pp.* 774, 775.)

Cases cited and approved: State v. France, 1 Ov., 434; State v. Jones, 2 Yerg., 22; Clark v. State, 4 Humph., 254; Andrews v. State, 2 Sneed, 550; Hutchinson v. State, 3 Cold., 95; Witt v. State, 5 Cold., 15; Stewart v. State, 7 Cold., 389, and cases from other States, cited in the opinion, on pages 774, 775.

---

*As to right of accused to appear unmanacled at trial, see note to State v. Williams (Wash.), 39 L. R. A., 821.

**3. SAME. Same. Case in judgment.**

The accused is deprived of his fundamental and constitutional right to be present in court during his trial, where, when the verdict of guilty in a murder trial was announced, he was in a room adjoining the courtroom handcuffed to another prisoner, not in sight of the judge and all the jurors, and the view through the doorway was obstructed by the sheriff standing therein and holding the door open. (*Post, pp.* 767-775.)

**4. SAME. Same. Minutes shown to be erroneous by facts in bill of exceptions; appeal is not a collateral attack upon record.**

Where, in a prosecution for murder, it affirmatively appears from the bill of exceptions that the accused was not in the courtroom, but in the prisoner's room, when the verdict of guilty was announced, a recital in the minutes of the trial court embodied in the record showing affirmatively that the accused was present when the verdict was returned is erroneous, and will not preclude him from showing the truth. An appeal for the purpose of correcting errors is not a collateral attack upon the record and proceedings. (*Post, pp.* 775, 776.)

Case cited and distinguished: Griffin v. State, 109 Tenn., 34.

**5. SAME. Same. Presence of accused is not waived by his counsel's failure to object to his absence when verdict is returned in a felony case.**

The right of the accused to be present in the courtroom when the verdict of guilty is announced in a felony case is so fundamental that it cannot be waived by the failure of his counsel to make objection to the rendition of the verdict until the accused can be present. (*Post, p.* 776.)

**6. SAME. Death before indictment for murder must be affirmatively proved.**

In a prosecution for murder, the proof must affirmatively show that the offense was committed, and that the death of the decedent occurred as the result of the wound before the finding of the indictment. (*Post, pp.* 776, 777.)

Percer v. State.

7. **SAME.** Death within a year and a day from injury must be affirmatively proved.

In a prosecution for murder, the proof must affirmatively show that the death of the decedent occurred within a year and a day from the date of the injury received. (*Post, p.* 777.)

FROM TIPTON.

Appeal in error from the Circuit Court of Tipton County.—S. J. EVERETT, Judge.

SIMONTON & SON and CHARLES B. MCCLELLAN, for Percer.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff in error was convicted of murder in the second degree for the unlawful killing of one Alonzo Small, and sentenced to the State penitentiary for a term of ten years. He has appealed in error.

The second assignment of error on behalf of the prisoner is as follows:

"The court erred in declining to set aside the verdict of the jury and grant the plaintiff a new trial, because the plaintiff in error was not at the bar of the court or in the presence of the court or jury when the ver-

dict of guilty was rendered against him in this cause, but was handcuffed and in charge of an officer, in a room separated from the courtroom and with another prisoner, when said verdict was rendered."

In support of the motion the plaintiff filed his own affidavit and that of W. V. Bringle, a practicing attorney at the Covington bar. Mr. Bringle states:

"That he is not interested nor of counsel in the case; that he was in the courtroom when the jury returned their verdict, and he noticed that defendant was not in the courtroom at that time; that there is a room back of the judge's stand, from which there is a stairway leading up to the tower of the courtroom; that affiant is informed that the defendant was in this room in charge of an officer, and the door of this room opening into the courtroom was closed at the time the said jury returned its verdict; that there is a partition separating said room from the courtroom, and the only means of communication is a door and two windows, and that said windows, as well as the door, were closed at the time said verdict was returned, and the defendant was not in the presence of the court or jury, and was not in a position to see the court and jury, when said verdict was rendered; that the windows to said room are painted so that one cannot see through them, the glass being painted or clouded."

Mr. Bringle was called for further examination by the State and testified as follows:

"I was sitting down by the jury box facing the door

Percer v. State.

which I testified was closed when the jury returned its verdict. I could not have been mistaken about the door being closed, for as soon as the jury rendered its verdict I went to counsel for defendant and called his attention to it. The room where the prisoners are kept is immediately behind the judge's bench, and there is a glass partition between this room and the main courtroom. Then there is a glass door to the prisoner's room to the right of the judge and next to the door to the jury room. There are three or four windows behind the judge's bench, and within three or four feet from where he sits; but the glass in them is frosted. These windows were closed when the jury came in and returned its verdict. The partition separating the two rooms extends from the floor to the ceiling, but forms almost a solid glass partition."

The plaintiff in error in his affidavit states as follows:

"That he has not had a fair and impartial trial, and he was not allowed his constitutional right of being present in the courtroom during the trial in said cause and the rendition of the verdict against him; that is to say, he was not present in the courtroom when the jury in said cause returned their verdict finding him guilty of murder in the second degree and assessing his punishment at ten years' confinement in the State penitentiary. Affiant states that at the time said verdict was returned into the court he was not in the court-

room, but was in a room entirely separated from said courtroom and back of the judge's bench or stand. Said room is separated from the courtroom by a partition, and the only means of communication between the two are a door and some windows. The glass in the windows is painted or clouded, so that one cannot see through them. Said door was closed at the time the verdict was returned into the court, so that defendant could not see the court or the jury, and he was not in the presence of the court, nor in the presence of the jury, but was in said room handcuffed—that is, shackles were on one hand—and in charge of an officer, together with another prisoner.

"Wherefore the defendant says he has been deprived of his constitutional rights, and he asks the court that he be granted a new trial, that justice may be done," etc.

The following evidence was submitted on behalf of the State touching the subject of inquiry:

Fred Smith testified as follows:

"I am a deputy sheriff, and was in charge of Ben Percer, the defendant, when the jury came in to render their verdict. I was standing by the door leading to the room where defendant was, and within two or three feet of the door to the jury room. Ben Percer was sitting on a bench cuffed to another prisoner. He was about five or six feet from the foreman of the jury when the verdict was announced. When the jury came in to announce the verdict, Judge Everett told me to push

that door open, and I pushed it open, and Ben Percer could see nearly all the jury. When the foreman handed the papers to the judge, he stepped back in full view of the door and in full view of the defendant, and the judge said to the foreman in a tone of voice loud enough to be hard all over the courtroom, and loud enough for Ben Percer to have heard it. "Mr. Foreman, have you agreed upon a verdict?" to which the foreman announced that they had, and stated what the verdict was, and the court repeated what the foreman said their verdict was, and asked the jury if that was their verdict, to which they all replied it was. I know the door was open all the time, for I was standing with my head against it holding it open."

On cross-examination the witness further stated:

"The room that Ben Percer was in is directly behind the judge's bench, and separated from the other room by a partition. The door is more than half glass, is in three or four feet of the door to the jury room, and is plain glass. There are three windows in the partition immediately behind the judge's stand and in two or three feet of where the judge sits. They are frosted. The outside windows of the room where Percer was have iron bars across them, and these bars were put there to prevent prisoners from escaping. The room where Ben Percer was at the time the verdict was rendered is used for the safe-keeping of prisoners while awaiting trial of their cases."

Louis Ogilbie, deputy sheriff, testified as follows:

"I was sitting over at a stove near the east side of the courthouse when the jury came in to report, and before the foreman reported I heard Judge Everett say something to Fred Smith, and Fred pushed the door open where the prisoner was sitting. This door is a little west of the center of the courthouse, which is to the right and a little to the rear of where the judge was sitting, and is near the door to the jury room."

The attorney-general testified:

"I was sitting just east of Judge Everett, and when the jury came in I heard Judge Everett say to Deputy Sheriff Smith something I did not understand, and Smith with his left hand extended pushed back, as I thought, the door. His entire left arm passed out of my sight into this little room. He could not have gotten his arm out of my sight if the door had been closed. When the jury came in the foreman stepped up and handed the indictment to the judge, and stepped back in front, two or three feet from the door, and the judge in his usual strong voice asked the foreman if the jury had agreed upon a verdict, and, upon his reply in the affirmative, asked what it was, and, upon being told, repeated it to the jury and asked if it was the verdict of the whole jury. He did this in a voice sufficiently loud to have been heard by the defendant where he was sitting.

J. R. Warmath said:

"I was foreman of the jury that tried Ben Percer. When the jury came in I stepped up to the judge's stand

and handed him the indictment, and stepped back in front of the room, two or three feet from the door in controversy. I never noticed this door. Don't know whether it was open or not. Any person sitting on the bench in this room could see the jury, but not the judge."

It will be observed from the testimony before the circuit judge on the motion for a new trial, it was a controverted question whether the door leading from the courtroom to the prisoner's room was open and whether the prisoner could have seen from his position the jury when its verdict was returned. It is well settled in criminal as well as in civil cases that upon motions for new trial involving questions of fact, the findings of the trial judge will not be disturbed if there is any material evidence to support them. *Ryan* v. *State,* 97 Tenn., 211, 36 S. W., 930; *Thomas* v. *State,* 109 Tenn., 684, 75 S. W., 1025.

It will be observed, however, there are some questions presented in these affidavits which are not controverted, but which are admitted as true by both sides. The potent fact which is undisputed is that at the time the jury returned its verdict, the prisoner was in another room, handcuffed to another prisoner, and not in sight of the trial judge. While the court finds that the door was open, it was being held open in some fashion by a deputy sheriff, who claims to have held it open with his head. It is admitted that the sheriff himself was in the doorway, thus obstructing the view of the prisoner, who was sitting on  bench in the prisoner's chamber, hand-

cuffed in the manner already described. It is also admitted that while the prisoner, from his position, could see some of the jury, he could not command a view of the entire jury. Finally it is admitted that the prisoner, from his position, could not see the trial judge; nor could the trial judge see the prisoner. These admitted facts are utterly subversive of fundamental and constitutional rights guaranteed a prisoner on trial for his life or liberty. It is well settled that it is essential to a valid trial and conviction on a charge of felony that the defendant shall be personally present, not only when he is arraigned, but at every subsequent stage of the trial, unless he may and does waive his right to be present. Accordingly it has been held that defendant must be present at the arraignment and plea (*Hall* v. *State,* 40 Ala., 698); at the impaneling and swearing of the jury (*Rolls* v *State,* 52 Miss., 391); at the discharge of the jury because of the sickness of a juror or of inability to agree (*State* v. *Smith,* 44 Kan., 75, 24 Pac., 84, 8 L. R. A., 774, 21 Am. St. Rep., 266; *State* v. *Wilson,* 50 Ind., 487, 19 Am. Rep., 719); during the examination of witnesses or the reception of other evidence (*People* v. *Kohler,* 5 Cal., 72); when the court charges the jury and when they are recharged or given additional instructions after retirement (*Bonner* v. *State,* 67 Ga., 510); when the case is finally submitted to the jury (*Allen* v. *Commonwealth,* 86 Ky., 642, 6 S. W., 645); when the verdict is received or amended (*Waller* v. *State,* 40 Ala., 325; *State* v. *France,* 1 Overt.,

434; *Clark* v. *State,* 4 Humph., 254; *State* v. *Jones,* 2 Yerg., 22; *Andrews* v. *State,* 2 Sneed, 550; *Hutchinson* v. *State,* 3 Cold., 95; *Witt* v. *State,* 5 Cold., 15; *Stewart* v. *State,* 7 Cold., 338); when sentence is pronounced (*Cole* v. *State,* 10 Ark., 318; *Harris* v. *People,* 130 Ill., 457, 22 N. E., 826). Defendant's presence is not necessary during proceedings which are no part of the trial, but merely preliminary or subsequent thereto. *Jones* v. *State,* 152 Ind., 318, 53 N. E., 222. According to the better opinion the hearing and determination of a motion for a new trial or in arrest of judgment is no part of the trial, and defendant need not be present. *Com.* v. *Costello,* 121 Mass., 371, 23 Am. Rep., 277; Cyc., vol. 12, p. 523.

It is said on behalf of the State that the minutes of the trial court embodied in the record show affirmatively that the prisoner was present when the verdict was rendered, and hence this is an effort to contradict the positive recitals of the record. *Griffin* v. *State,* 109 Tenn., 34, 70 S. W., 65, is cited, as follows:

"It is said the court below erred in pronouncing sentence upon the defendant during his absence. No such question was made in the court below, and there is nothing in the record to indicate his absence, except the mere failure of the entry to affirmatively show he was present. This is not sufficient to support the conclusion. This court will presume that the circuit judge did his duty in such matter, in the absence of an affirmative showing to the contrary."

But in the present case it affirmatively appears from the bill of exceptions that the defendant was not in the courtroom, but in the prisoner's room, when the verdict of the jury was announced. This is not a collateral attack upon the record and proceedings herein, but is an appeal for the purpose of correcting errors. Hence, if it appears that the prisoner was not in the presence of the court when the verdict of the jury was returned, it was error for the record to so recite, and this recital will not preclude the prisoner from showing the truth.

It is also argued on behalf of the State that it affirmatively appears that counsel for the prisoner were present in the courtroom when the verdict of the jury was announced, and that it does not appear that any objection was made by his counsel at the time that the prisoner was absent. But the right of the prisoner to be present in the courtroom in front of the court and jury when deliverance is made is so fundamental that it cannot be waived by the failure of his counsel to make objection to the rendition of the verdict until the prisoner can be present.

It is also assigned as error that the State failed to prove that the shooting occurred, or that the deceased died as the result of the wound, before the finding of the indictment. This question was not raised on the motion for a new trial, nor at any stage of the proceedings below. "The indictment will be satisfied by proof of the offense on any day anterior to the finding." Wharton's Criminal Evidence, sec. 103.

"So it is also for the State to show that the crime was committed before the indictment was found, and, where it fails to do so, a conviction will be reversed." 12 Cyc., 382.

"It is also necessary as a general rule, no matter whether the exact time or place are material or not, to prove that the crime was committed before the time of the indictment." Elliott on Ev., vol. 4, sec. 2714.

"In murder, the death must be proven to have taken place within a year and a day from the date of the injury received." Wharton on Homicide (3d Ed.), p. 18.

The indictment was found on the 6th day of July, 1906, and charges that the murder was committed on the — day of May, 1906. The trial occurred at the November term, 1906, of the circuit court. Dr. H. L. Ellison, the first witness for the State, testified that he thought deceased died some time in July, without stating the day of the month or the year his death occurred. This is the only evidence we find in the record tending to show the date of the death of the deceased, and it does not affirmatively appear from this testimony whether the death occurred before or after the finding of the indictment. The deceased was not killed instantly, but lingered until some time in July; but how long he lingered, or what month or what year he received the fatal wound, we cannot ascertain from the record. The proof is entirely silent on the subject.

For the errors indicated, the judgment will be reversed, and the cause remanded for a new trial.