DEWEY BRIGGS

*v.*

STATE OF TENNESSEE.

(*Knoxville*, September Term (May Session), 1959.)

Opinion filed September 9, 1960.

McCLUEN & COOLEY, LLOYD G. McCLUEN, Rockwood, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the state.

Mr. Justice Burnett delivered the opinion of the Court.

The plaintiff in error, Dewey Briggs, was convicted of voluntary manslaughter and sentenced to serve not less than two (2) nor more than five (5) years in the State penitentiary. From this conviction he has seasonably appealed, filed briefs, and arguments have been heard for both sides. We now have the matter for determination.

In view of the fact that we have concluded that the case must be reversed and remanded for a new trial, a very brief comment will be made on the facts and no reference to other questions involved will be considered.

On January 30th and 31st, 1959, a number of relatives, both by affinity and consanguinity, and friends were having a party in Morgan County, when in the small hours of the morning an argument ensued between the deceased and plaintiff in error. After this argument was

apparently patched up the homicide in question occurred. A reading of this record shows clearly that the defense of the plaintiff in error was that of self-defense. He, according to his testimony and that of his witnesses, believed that his life was in danger and that the deceased was a dangerous man when drinking.

The jury concluded that the plaintiff in error was guilty of voluntary manslaughter. The State takes the position that, under the facts, he is thus clearly guilty and regardless of the error to be hereinafter mentioned the verdict should be affirmed.

During the progress of the trial one of the jurors, who was a neighbor of the plaintiff in error, made a statement to the other jurors (that is while they were deliberating on the case) that the plaintiff in error had a bad temper and would kill you if he got mad, and that he had killed his brother. This is the substance of what this juror told the other jurors while they were deliberating on the case after the conclusion of the evidence and the charge of the court. This fact was brought to the attention of the court in the argument for the motion for a new trial by the affidavits of several jurors. The court summoned all of the panel and each juror was examined. There is no question but that this juror, Freels, made such statements, or this is the substance of what he said. Each juror though said that these statements made by Freels had no influence upon their verdict. The juror who made the statements said that it didn't influence him either one way or the other and that he just inadvertently made the statement while they were discussing the case.

The State takes the position that since all the jurors testified that this didn't affect their verdict that it con-

stitutes harmless error under our statute, Section 27-117, T.C.A. The State relies on *Steadman v. State,* 199 Tenn. 66, 282 S.W.2. 777; and *Smith & Reynolds v. State,* 205 Tenn. 502, 327 S.W.2d 308; 361 U.S. 930, S.Ct. 372, 4 L.Ed. 2d 354. We think that both of these cases, that is the Steadman case and the Smith case, are easily distinguishable from the case at bar. In the Steadman case there was a woman juror and she and the other jurors were separated during the trial, and we held that this separation constituted harmless error. In the Smith case it was shown that the jurors probably read the newspapers and heard radio announcements (This was not testimony in the sense herein given. It was more or less a rehash of what had been or was going on in the trial.), but for the reasons set forth in that opinion we, too, held that that was harmless error. The facts of those two cases are entirely different from the facts in this case. In the present case a juror actually gave testimony in the jury room to that body about the happenings of another homicide and that the plaintiff in error was a dangerous and bad man when he got mad. None of these things had been offered in testimony at the trial of the case. The plaintiff in error nor the State knew nothing about this so far as this record shows, and neither party had a right to examine or cross-examine witnesses on these things or show the facts either pro or con as to what this juror told his fellow jurors.

The assignment here is that by this testimony being given to the jury this constitutes, and is in fact, a violation of the constitutional rights of the plaintiff in error as set out in Article I, Section 9 of the Constitution, which reads:

*"Right of the accused in criminal prosecutions.*— That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; \* \* \* to meet the witnesses face to face, \* \* \*."

■ Thus it is, if this testimony constitutes or is a violation of the plaintiff in error's constitutional rights then the Harmless Error Statute will not save the error herein committed. *Dykes v. State,* 201 Tenn. 65, 296 S.W.2d 861.

In *Ryan v. State,* 97 Tenn. 206, 36 S.W. 930, 931, an almost identical state of facts, as to those occurring here, occurred. In that case one of the jurors made a statement during the progress of the trial in the presence of the other jurors about the plaintiff in error, Ryan; that he had been indicted for an attempt to commit murder, and how he did it, that he went up behind the person that he intended to kill while he was stooping over and hit him in the head with a heavy wrench. This Court, even though the trial court in that case after hearing all the jurors testify that these statements did not affect the verdict, held that such statements were highly prejudicial and that they invalidated the verdict of the jury. The Court among other things said:

"\* \* \* In criminal cases, more emphatically, there can be no exceptions, under our laws, because among other rights absolutely secured by the Constitution to the accused, in all criminal prosecutions, is the right to meet the witness face to face."

We have Shepardized this case and it has not been reversed down through the years. We distinguished it in *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243, because in that case the factual situation was entirely dif-

ferent from that here, and was more in line with that of the Steadman or the Smith cases.

The same holding as that in the Ryan case goes back over a hundred years to the case of *Sam v. State,* 31 Tenn. 61, where a very similar factual situation occurred, and the Court held that:

"Such is the long established and inflexible rule, to which no exception can be admitted, either in civil or criminal cases. In criminal cases, more emphatically, there can be no exception under our law; because, among other rights absolutely secured by the Constitution to the accused, in all criminal prosecutions is the right 'to meet the witness face to face'. Art. I, sec. 9."

This Court further in the Sam case made the following very apt statement:

"The statement of the juror that the facts disclosed in the jury-room produced no effect upon his mind, and, he thought, none upon the minds of the other jurors, is to be taken with great allowance. It is to be expected that, when interrogated by the court and made sensible of the impropriety of his conduct, he would seek to obviate the consequences. He may not have been aware of any influence exerted upon his mind."

In *Lee v. State,* 121 Tenn. 521, beginning at page 552, 116 S.W. 881, at page 889, this Court sets forth three lines of cases upon the subject of admitting the affidavits of jurors to impeach their verdict. Among the three lines of cases where such affidavits are admitted are a number of cases similar to that here involved.

In 58 A.L.R.2d at page 568, is a note, as follows:

"Most of the courts which have received jurors' affidavits or testimony as to improper statements made by other jurors in the course of the deliberations have taken the view that where the statement in question related to a matter not in evidence, and having a tendency to reflect upon the accused's claim of innocence or the degree of his guilt, it would be presumed that it did in fact have an improper effect upon the jury's deliberations and was prejudicial to accused."

Among cases cited are the Sam case and the Ryan case, hereinbefore referred to, from this State, along with cases from many other States. We think this a sound conclusion and one that must be followed in view of the fact of the violation of the plaintiff in error's constitutional rights.

■ There should be some way to discipline jurors who speak out to their body on things that aren't admitted in evidence, which might in some way affect the accused. The trial judge should be rather strict in dealing with a juror when such appears to have happened. In the case of *Morton v. State,* 69 Tenn. 498, Judge Turney in delivering the opinion in that case said of an act of a juror of the kind that: "Such conduct on the part of a juror is quite reprehensible, and will always prejudice the accused." We agree with this statement of Judge Turney.

For the reasons above expressed, this cause must be reversed and remanded for a new trial.