**STATE of Tennessee, Appellee,**

v.

**Lester BOLES, Appellant-Defendant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 21, 1980.

Permission to Appeal Denied by Supreme Court April 21, 1980.

James Reneau, Celina, for appellant-defendant.

William M. Leech, Jr., Atty. Gen. of Tenn., Gordon W. Smith, Asst. Atty. Gen. of Tenn., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Jeffrey Hall, Asst. Dist. Atty. Gen., Jacksboro, J. Frank Qualls, Harriman, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Lester Boles, was convicted in the Morgan County Criminal Court of murder in the second degree and received a penitentiary sentence of 10 years.

The issues presented for review are (1) whether the evidence is sufficient to support the verdict, and (2) whether a reversal is required because several jurors, during the deliberation of the jury, discussed certain facts not in evidence.

We find the evidence to be sufficient to support the jury's verdict finding the defendant guilty of second degree murder. However, we find reversible error regarding the defendant's jury complaint.

Around 7:00 p. m. on November 9, 1976, the defendant, a deputy sheriff, was at the Morgan County jail when he heard tires "squalling" outside. Quinton Henry, a game warden, who was at the jail with the defendant, offered the use of his Scout vehicle to pursue the offending automobile. As the two men went outside, Boles observed a red, 1967 Chevelle in front of the jail. The driver was racing the engine and moving the vehicle forward and backward. The driver of the Chevelle then drove away and was pursued by Boles and Henry. They lost sight of the Chevelle during the pursuit, but later found it at a Spur service station. They attempted to block the Chevelle, but the driver drove away. Boles fired two shots in the direction of the Chevelle, and the Chevelle ran off the road into a field. The victim, Paul Richard Morgan, was found behind the steering wheel of the car. He had a gunshot wound in his head from which wound he later died.

The defendant testified that he approached the victim's automobile at the ser-

vice station, opened the car door, and smelled a strong odor of alcohol. When he advised the victim that he was under arrest, the victim replied, "I'm not going any place." The victim then "gunned the car in reverse," knocking the defendant away from the open door. As the victim sped away, the defendant fired two shots in the direction of the car. The defendant insisted that he was shooting at the vehicle's tires and had no intention of hitting the victim. However, the State had offered evidence that the victim's car pulled out from the service station before the defendant ever got to the car, and that the defendant was not hit by the victim's car nor was any assault otherwise made upon the defendant. Other evidence showed that the defendant held the gun with both hands at arm's length and deliberately aimed his pistol in the direction of the victim's vehicle.

The defendant contends that he was acting properly in initially attempting to arrest the victim for driving while intoxicated, and that after the victim feloniously assaulted him with the automobile, he was entitled to use all necessary means to effect the arrest of the victim for this alleged felony. Thus, he argues that this homicide was justifiable and excusable.

The State contends that the evidence presented a question of fact as to whether the arrest attempted was for a felony or a misdemeanor, and that because the evidence was in dispute, it was a matter for the jury to determine.

The law sharply distinguishes between the amount of force that an officer may use in effecting an arrest for a misdemeanor as contrasted to a felony.

■ An officer may not kill a fleeing misdemeanant, even though he cannot be taken otherwise. *Johnson v. State*, 173 Tenn. 134, 114 S.W.2d 819 (1938); *Human v. Goodman*, 159 Tenn. 241, 18 S.W.2d 381 (1929); *Love v. Bass*, 145 Tenn. 522, 238 S.W. 94 (1922); *State v. Dunn*, 39 Tenn. App. 190, 282 S.W.2d 203 (1943).

In *Human v. Goodman, supra*, the Supreme Court, in pointing out the limitations of an officer in making an arrest for a misdemeanor, said:

> Except in self-defense, an officer cannot resort to the extremity of killing, or shedding blood, in arresting or in preventing the escape of one charged with an offense less than felony, even though the offender cannot be taken otherwise. 159 Tenn. at 243-44, 18 S.W.2d at 381.

■ Even when making a felony arrest, the law does not clothe an officer with authority to arbitrarily judge the necessity of killing, and such a course must be the last resort. He does not have the absolute right to kill, either to take the prisoner or prevent his escape, unless reasonably necessary. Whether there is reasonable necessity for an officer to shoot a felon in flight, and the reasonableness of the grounds on which the officer acted, are questions for the jury. *Scarbrough v. State*, 168 Tenn. 106, 76 S.W.2d 106 (1934); *Human v. Goodman, supra; Love v. Bass, supra.*

■ Thus, it is clear that the defendant had no right to shoot into the victim's automobile solely for the purpose of trying to arrest him for an alleged offense of driving while intoxicated. Further, the facts as to whether the victim had assaulted the defendant with his automobile were in dispute. Thus, it was the jury's function to decide whether the victim had committed a felony, or even if he had, whether the defendant's actions were necessary or reasonable under the circumstances. The jury, by its verdict, resolved all of these issues adverse to the defendant's contentions. Obviously, the jury found either that the victim was not fleeing from a felony arrest, or if he was, that the officer's actions in shooting him were not reasonable or necessary under the circumstances.

■ There is ample evidence here to show that the defendant willfully and maliciously killed the victim without justifiable cause. Thus, the elements of second degree murder have been established. The evidence is sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Tenn.R.App.P. 13(e). The defendant's evidentiary complaint is overruled.

824

■ Next, we find merit to the defendant's contention that he was prejudiced because the jurors, in their deliberations, discussed and considered facts not in evidence.

The defendant, prior to the hearing on his motion for a new trial, filed with the court affidavits by jurors Henry and Erickson in which they stated that during the deliberations of the jury, one or more of the jurors mentioned and discussed that the defendant had previously shot an individual, and that he was "trigger happy" like a state trooper, named Bilbrey, who was previously stationed in Morgan County. As a result of these affidavits, all of the jurors were questioned at the hearing on the motion for a new trial.

Juror Erickson testified that during their deliberations, someone said that the defendant "had shot somebody somewhere or another before this." The juror also stated that some member of the jury made a comparison between the defendant and a person who had formerly been in Morgan County. He could not identify the juror who made these comments.

Juror Henry testified that in the course of their deliberations, "they just mentioned the fact that the man had two, . . . I believe they said two prior cases, and that he was similar to one of our Highway Patrolmen." She stated that when this statement was made, some of the others said "that's right." When asked exactly what had been said that formed the basis of her affidavit, she replied: ". . . it was to this effect—that the man was trigger happy just like the Highway Patrolman." She also testified that a statement was made in the jury room that the defendant had shot another individual at an earlier time. Juror Henry could not identify the juror who made these statements.

Juror Helton testified that during their deliberations one of the jurors said something pertaining to a different shooting—that the defendant "had shot another man."

Juror Hall testified that during their deliberations he heard it mentioned that "Mr. Boles had shot somebody before, maybe in the leg."

Two additional jurors recalled that something was mentioned during their deliberations about a prior shooting incident involving the defendant. Two other jurors did not remember any discussion about the prior incident. Another juror had heard of it, but could not remember whether she learned of it in the jury room or after the trial. Three jurors remembered that something was said about a different shooting but that it had to do with a question that had been asked by one of the attorneys.[1] When someone commented that the question had been ruled out by the court, there was no further discussion of it.

None of the jurors were able to identify which juror made these extraneous remarks. Each testified that his or her verdict was based on the evidence introduced at the trial, and that these extraneous remarks about a prior shooting did not influence his or her verdict.

Notwithstanding the jurors' reluctance to identify the juror who brought these matters into their deliberations, the record affirmatively shows that at least several of them were recipients of the information that the defendant had been involved in a prior shooting incident. At least two, if not more, stood in judgment of the defendant with the indelible information before them that the defendant was "trigger happy" like a former highway patrolman.

Obviously, these extraneous matters brought to the jury's attention in their deliberations has created error in this case.

The defendant insists that the present case is controlled by our Supreme Court's holding in *Briggs v. State*, 207 Tenn. 253, 338 S.W.2d 625 (1960). In *Briggs*, a juror,

1. During cross-examination of the defendant by the attorney general, the following occurred:

Q. Say you'd been a Deputy Sheriff about two (2) months at the time this incident occurred?

A. Yes sir.
Q. Was this the third one you shot?
MR. RENEAU: If Your Honor please, I object to that.
THE COURT: Sustained.

who was a neighbor of the defendant, had remarked to the other jurors, while they were deliberating, that the defendant had a bad temper, would kill a person if angered by him, and had killed his brother. The trial court examined all of the jurors and each testified that the remark had no influence on his or her verdict. Notwithstanding, the Supreme Court reversed the defendant's conviction, holding that the juror's remarks amounted to testimony where neither party could examine or cross-examine the witnesses, and violated the defendant's constitutional right to be heard and to confront witnesses in his case.

In *Briggs*, the court cited the case of *Ryan v. State*, 97 Tenn. 206, 36 S.W. 930 (1896) as authority for its ruling. In *Ryan*, one of the jurors had told the other jurors that he had been on the grand jury when the defendant, Ryan, had been indicted for an attempt to commit murder upon one Kehoe; that Ryan sneaked up behind Kehoe and hit him with a heavy wrench; and that Ryan was a bad man and dangerous man to the community. The Supreme Court, in reversing Ryan's conviction, held that these remarks were "highly prejudicial" to the defendant, and that he had been denied "the right to meet the witnesses face to face." 97 Tenn. at 211–12, 36 S.W. at 931.

We find the factual situation in the present case to be akin to the factual situation in *Briggs* and *Ryan*. In the present case, the jury had before it information that the defendant was "trigger happy," and that he had been previously involved in one or two cases, and that in one of these incidents, the defendant had evidently shot someone in the leg. The defendant was compared to a former highway patrolman, who apparently had the reputation of being prone to shoot potential arrestees unnecessarily. There was no evidence introduced in the trial of the case to support any of these matters. Clearly, the defendant was denied his right of confrontation regarding these extraneous matters and was prejudiced thereby.

The State argues that this error should be treated as harmless and relies on the cases of *Steadman v. State*, 199 Tenn. 66, 282 S.W.2d 777 (1955) and *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959). We see no similarities between these two cases and the present case. In *Steadman*, a woman juror was separated from the male jurors, but none of the jurors were exposed to any improper communications. In *Smith*, it was shown that the jurors probably read newspapers and heard radio broadcasts which apparently rehashed what had gone on in the trial. However, the extraneous matters that the *Smith* jury was exposed to did not give the jury any knowledge beyond what they had gleaned from the trial. In both cases, the Supreme Court found that the facts present did not affect the verdict of the jury and that any error was harmless.

In the present case there was no evidence introduced at the trial regarding any of the extraneous matters that were brought into the deliberations of the jury. Had these extraneous matters been testified about at the trial, then no particular harm would have resulted. *See Troglen v. State*, 216 Tenn. 447, 392 S.W.2d 925 (1965).

In *Briggs v. State, supra,* the court indicated that if an error concerned the violation of an accused's constitutional rights, it could never be held to be harmless. However, more recent decisions would allow the use of the harmless error rule, provided the error was found harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Rippy v. State*, 550 S.W.2d 636 (Tenn.1977); *Bays v. State*, 529 S.W.2d 58 (Tenn.Cr.App. 1975); *Huffman v. State*, 3 Tenn.Cr.App. 124, 458 S.W.2d 29 (1970).

The evidence in this case is sufficient to support a second degree murder verdict. However, the evidence is less than overwhelming, and the jury may have been motivated by these extraneous matters to return the verdict that it did rather than a manslaughter verdict. At any rate, in view of all the facts and circumstances involved in this tragic case, we are unable to say that the error herein is harmless beyond a reasonable doubt, and we cannot say that it did

not affect the jury's verdict to the defendant's prejudice.

We reverse the defendant's conviction and remand this case for a new trial.

WALKER, P. J., and TATUM, J., concur.