**STATE of Tennessee, Appellee,**

v.

**Robert BREWER and Barbara Brewer, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 22, 1982.

Permission to Appeal Denied by Supreme Court May 10, 1982.

Feb. 22, 1982.

John F. Southworth, Asst. Atty. Gen., Nashville, John M. Roberts, Dist. Atty. Gen., Livingston, Marsha L.K. Selecman, Asst. Dist. Atty. Gen., Crossville, for appellee.

James S. Smith, Jr., Rockwood, for appellants.

## OPINION

DAUGHTREY, Judge.

Robert Brewer and Barbara Brewer, husband and wife, were convicted of manufacturing marijuana and of possession of marijuana for resale. They were sentenced to two to five years imprisonment and assessed a fine of $2500 in each case. On appeal they challenge (1) the sufficiency of the evidence, (2) the validity of the search of their premises, (3) the admissibility of a statement made at the jail by Barbara Brewer, and (4) the validity of the jury's verdict, in view of an extraneous comment allegedly made by one of the jurors. We find no reversible error in connection with these issues.

The charges against the Brewers and their non-appealing co-defendant, John Paul Taylor, resulted from the execution of a search warrant at the Brewers' rural Cumberland County home, where they lived with their two children. The Brewer residence was located on a three acre lot in a heavily wooded and largely undeveloped subdivision known as Genesis Estates. The gravelled road on which the Brewers lived had no official designation, but according to their rural mail carrier, it was apparently referred to by the Brewers and their correspondents as Cannibis Lane. The mailbox in front of the Brewer home was painted with the names of the four individual fami-

ly members and with large green marijuana leaves.

Officers executing the search warrant found three plant beds in which several thousand small marijuana plants were growing. Two of these were on the Brewers' property behind the house. The third was apparently just beyond their property line on a neighbor's uninhabited lot. Searching a partially constructed house behind the Brewer's home, officers also found large glass jars of dried marijuana, one of which bore the label "Bob's Sinsemillia, just picked Christmas 1978." This house was also uninhabited, and access had been gained by pulling away some of the siding. The owner testified that the controlled substances seized were not his and that he had not given anyone permission to store contraband in his house.

Officers found a briefcase containing several plastic bags of marijuana in the kitchen area of the Brewer home. Barbara Brewer was there at the time of the search and was put under arrest. Across the road officers also arrested Taylor, who was apparently living in a converted bus on the Brewers' property. They found a quantity of marijuana on Taylor's person and in the bus.

Taylor and Barbara Brewer were transported to the Cumberland County Jail. There a judicial commissioner, in the course of drawing up an arrest warrant, asked Brewer if she had any comment. She replied that she had grown the marijuana located on her property but denied any knowledge of the marijuana found in the briefcase seized from her home. This oral statement was introduced at trial over defense counsel's objection. The trial court ruled that it was a "voluntary" statement, apparently finding that it was not the result of custodial interrogation.

The defendants now argue that the search conducted on Cannibis Lane so far exceeded the scope of the warrant as to make the search illegal. This contention is based on defense testimony that a roughly drawn map showing where officers searched encompassed an area of not less than nine acres and possibly as much as forty acres. However, the officer who sketched the diagram in question had cautioned that it was not drawn to scale. He also verbally described the area searched, estimating its size at three acres, and told of the difficulty officers experienced in trying to determine just where the Brewers' property line was, in view of the fact that none of the lots in the subdivision were staked out or otherwise marked.

From our review of the record, it appears that the officers did not stray far from the Brewers' property. Certainly the extent of the search cannot be said to be unreasonable under all the circumstances. Moreover, as the State correctly points out, the defendants have failed to establish a privacy interest in any area that was searched beyond their property line. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Furthermore, the bulk of the contraband seized in the search was found on the Brewers' premises. We thus find no error in the trial court's ruling on the motion to suppress.

The trial court did err, however, in admitting Barbara Brewer's inculpatory statement, in the absence of testimony that she had waived her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).* There can be little question, and the State apparently conceded at trial, that Barbara Brewer was in custody at the time the statement was made. None of the prosecution witnesses was able to establish that Brewer had been given

---

* The State insists that the defendant's failure to file a timely motion to suppress under Rule 12 constitutes a waiver of this issue. We conclude that the trial judge could have declined to hear the matter on this basis. But since he failed to do so, we interpret the ruling to have been made upon an implicit finding of "good cause," and we therefore hold that it is now subject to review.

*Miranda* warnings; she explicitly denied being given advice of her rights. The State contends, however, that her statement at the jail was not made in response to questioning from any agents of the State. We find no merit to this argument.

■ *Miranda* deals with "questioning initiated by law enforcement officers." *Id.* at 444, 86 S.Ct. at 1612. Later cases read the term "law enforcement officers" broadly and suggest that *Miranda* applies to custodial interrogation conducted by any state agent involved in the adversarial process. *See, e.g., Estelle v. Smith,* 451 U.S. 454, 467–68, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359, 372 (1981); *Battie v. Estelle,* 655 F.2d 692, 698–99 (5th Cir. 1981). Clearly the *person who writes up an arrest warrant fits within this broad reading of Miranda.*

■ The determinative issue, then, is whether asking an accused for comment while writing up an arrest warrant for that same subject constitutes "interrogation" within the meaning of *Miranda.* This question is controlled by *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), in which the United States Supreme Court defined "interrogation" to include "express questioning or its functional equivalent." *Id.* at 300–301, 100 S.Ct. at 1689–90.

We conclude that the question posed in this case was one which the questioner "should have known [was] reasonably likely to elicit an incriminating response" from Barbara Brewer. *Id.* at 302, 100 S.Ct. at 1690. For this reason, her response, though not the result of lengthy or detailed interrogation, is protected by *Miranda* and should not have been introduced against her at trial. Nevertheless, we find that the evidence of Barbara Brewer's guilt was so overwhelming that any error in the admission of her statement was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We therefore decline to reverse her conviction on the basis of the *Miranda* error. *See Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

■ We further conclude that the evidence in the record is more than sufficient to convict Robert (Bob) Brewer. The fact that he was not actually on the premises at the time the search warrant was executed does not establish his innocence, given other testimony in the record tending to establish that he was living at home with his family at the time of the raid.

■ We are unable to review the remaining issue raised on appeal, which concerns alleged misconduct by one of the jurors who heard this case. The defendants attached to their motion for a new trial the affidavit of juror Alvin Vaughn, who swore that he overheard another, unnamed juror say "that Bob Brewer had been in court before as a defendant." The defendants insist that this affidavit brings the case within the ambit of *Briggs v. State,* 207 Tenn. 253, 338 S.W.2d 625 (1960), and *State v. Boles,* 598 S.W.2d 821 (Tenn.Cr.App.1980). They concede, however, that the statement attributed to the unknown juror, without more, does not rise to the level of misconduct involved in *Briggs* and *Boles.* Moreover, as the State points out, the order overruling the motion for a new trial indicates that an evidentiary hearing was held on the motion, but no transcript of the hearing is included in the record. Under these circumstances, the trial judge's conclusion on this matter must be accorded a presumption of correctness.

The judgment of the trial court is affirmed.

DUNCAN and SCOTT, JJ., concur.