IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1997 SESSION



**FILED**

**October 10, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,      )
                          )     No. 03-C-01-9601-CR-00028
        APPELLEE,         )
                          )     Sullivan County
v.                        )
                          )     R. Jerry Beck, Judge
MICHAEL BAILEY,           )
                          )     (Second Degree Murder)
        APPELLANT.        )


FOR THE APPELLANT:

Stacy L. Street
Attorney at Law
630 Elk Avenue
Elizabethton, TN  37643
(On Appeal)

J. D. Hickman
Attorney at Law
803 Liberty Drive
Kingsport, TN  37663
(At Trial)

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Sandy R. Copous
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

H. Greeley Wells, Jr.
District Attorney General
P. O. Box 526
Blountville, TN  37617-0526

Nancy S. Harr
Assistant District Attorney General
P. O. Box 526
Blountville, TN  37617-0526

David G. Overbay
Assistant District Attorney General
P. O. Box 526
Blountville, TN  37617-0526


OPINION FILED: _____


AFFIRMED


Joe B. Jones, Presiding Judge

**O P I N I O N**

The appellant, Michael Bailey (defendant), was convicted of second degree murder, a Class A felony, by a jury of his peers. The trial court found that the defendant was a standard offender and imposed a Range I sentence consisting of confinement for twenty (20) years in the Department of Correction. In this Court, the defendant contends (a) his Due Process rights were violated because he was unable to assist his counsel as a result of being denied medication, and (b) the sentence imposed by the trial court is excessive. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

The defendant does not challenge the sufficiency of the evidence. However, a recitation of the salient facts is necessary for an understanding of the issues presented for review.

The defendant, a truck driver, fell from a flatbed trailer and injured his spine. The defendant subsequently underwent disc replacement surgery in 1992. He was prescribed a variety of drugs following surgery including Prozac, an anti-depressant, Orudus, a muscle relaxer and pain reliever, Zantac, a digestive aid, Darvocet, a pain reliever, and Valium, an anti-anxiety drug.

On June 8, 1994, the defendant visited his doctor and refilled his prescriptions. He subsequently went to visit his mother who was ill. While visiting his mother, the defendant took each of the aforementioned drugs. When the defendant arrived home later that afternoon, he took an additional dose of Darvocet, Valium, and Zantac tablets. He also began drinking bourbon whiskey.

Prior to the evening of June 8th, it was evident the defendant and his youngest son, Justin, the victim in this case, did not get along. The victim's step-sister testified the defendant did not like Justin, and the defendant had threatened to "blow his [Justin's] brains out" a few days before Justin was murdered. On other occasions, the defendant had threatened Justin, physically assaulted him, and destroyed Justin's stereo. Jason, the defendant's oldest son, told the jury his father had threatened Justin in the past. The defendant told Justin, "I brought you into this world, I can take you out of this world."

2

On the evening in question, the defendant recounted to his sons, Jason and Justin, an incident which upset the defendant. The defendant and Justin encountered the defendant's father-in-law in a grocery store. The defendant and his father-in-law argued over fifty dollars the defendant and his wife owed to the father-in-law. Justin walked away from the argument. This angered the defendant because he wanted Justin to stand by his side and protect him because his physical condition would not permit him to defend himself. The defendant expressed anger as he recounted the incident. He asked Jason, his oldest son, if he would have stood by him during the argument.

The defendant subsequently went to Jason's room to listen to music. He eventually displayed a pistol, cocked it, and pointed it at Jason. When Jason told the defendant to remove the pistol from his room, the defendant placed the pistol in his pocket. He told Jason "it's not for you." The defendant then sat in a bean bag chair.

When Justin entered Jason's room, Jason and the defendant were listening to music. The defendant subsequently arose and pulled the pistol from his pocket. He pointed the pistol toward the floor. He then raised the pistol and pointed it at Justin's groin. A few seconds later the defendant pointed the pistol at Justin's head. Justin asked the defendant, "[A]re you going to shoot me, Dad?" Seconds later the defendant shot the victim in the eye. This gunshot wound resulted in the victim's death. The defendant went down a flight of stairs and exited the residence. He walked to a road behind his residence and threw the pistol on the ground.

The defendant testified he and his sons had been playing with the gun. They were "cutting up" and "acting stupid." He did not remember a shot being fired. He only remembered standing in a road behind his residence and hearing his wife scream. His defense at trial was he did not commit a knowing killing because he was under the influences of medication and alcohol.

# I.

The defendant contends his federal constitutional Due Process rights were violated during the trial because the sheriff's department exhibited "deliberate indifference by

refusing to administer the defendant's prescription pain medication to him" during the course of the trial. He argues this "deliberate indifference" forced him "to remain in constant pain and to 'squirm' on the stand during his [direct] testimony and cross-examination." In addition, his condition "severely hampered . . . his ability to assist counsel in his own defense."

The trial in this case lasted nine days. During the trial, the defendant's back pain and his medication were discussed several times by defense counsel and the trial court at sidebar and jury-out hearings. They discussed the pain being suffered by the defendant, the need for medication to alleviate the pain, and a need for recesses to permit the defendant to stand and move about the courtroom.

Defense counsel did not bring the special needs of the defendant to the attention of the trial court prior to trial. The defendant's physical condition was raised for the first time late in the afternoon of the first day of trial. Counsel apologized for failing to bring the matter to the attention of the trial court earlier. He advised the court about the defendant's condition and related the defendant's need to stand and move about the courtroom. Thereafter, the trial court attempted to accommodate the defendant during the balance of the trial. The court granted the defendant permission to arise and walk around the courtroom and advised counsel he would instruct the jury as to why the defendant was standing and moving while the trial was in progress. The court granted recesses on several occasions when defense counsel advised the court the defendant was in pain and needed to move about the courtroom. In addition, the court told defense counsel he would entertain a motion to permit the defendant to return to the jail while the trial was in progress if it would help to alleviate defendant's pain. Defense counsel advised the court he wanted the defendant in the courtroom, and the defendant wanted to remain in the courtroom.

When defense counsel requested the defendant be given the pain medication prescribed for him late in the afternoon of the second day of trial, the trial court was apprehensive of the effect the medication might have on the defendant's mental faculties. After a lengthy dialogue, the trial court asked the bailiff to call the jail and have someone bring the medication to the defendant. The court did this on several occasions during the course of the trial.

4

It appears the trial court had reservations regarding the defendant's statements to counsel that he was suffering severe pain. The court made several comments in this regard. The court noted:

> I've watched the defendant throughout the trial. I haven't seen him grimace, or show any indication of pain, or any suffering. He may have a high tolerance of pain, but I haven't observed anything indicating that he is in any type of extreme [pain] --- or anything of that nature.

The court also noted, "[H]e hasn't shown me any indication of pain, I have watched him throughout the trial." At another point the court noted, "I have observed no indication of pain in him. I've been watching him. . . . [W]e're looking each other in the eye about all day." Finally, the court said:

> [T]he Court noticed that at the beginning of this hearing, Mr. Hickman [defense counsel] couldn't find his glasses, and the defendant bent his -- appears to have good mobility in bending because he bent from his seat at counsel table to his left to hand Mr. Hickman's glasses over.

Defense counsel was the only person who described the nature of the pain the defendant was suffering. Counsel advised the court he was simply relaying what the defendant told him. The defendant alluded to "pain" during his cross-examination. The assistant district attorney general asked the defendant if he was suffering from pain on the night he killed the victim. The defendant stated he "was having pain constantly." The assistant district attorney general then asked the defendant if he was still having pain. The defendant responded by saying, "Just like I do now." Otherwise, no witness testified regarding the nature or severity of the pain.

The defendant could have shed light on the severity of his pain by testifying either at a jury-out hearing or during his testimony. He presented several witnesses who could have given testimony concerning what had allegedly occurred regarding the medication. The defendant called the person who was responsible for administering the medication to the prisoners at the county jail. He did not question the witness as to why the sheriff's department had refused to give him the drugs prescribed by his doctors. The defendant also called the orthopedic surgeon who performed the surgery, a psychologist who

5

discussed the management of pain with the defendant, and a psychiatrist who managed the nature and amount of the medication given to the defendant. No questions were propounded to these witnesses regarding what effect, if any, the denial of medication would have upon the defendant. Finally, defense counsel gave the trial court medical records to establish the defendant's need to move his body to alleviate pain. Counsel advised the trial court he was not going to introduce the records into evidence. In short, the record in this case is void of any evidence or indication that the defendant was "severely hampered . . . [in] his ability to assist counsel in his own defense."

It has long been established in this jurisdiction that allegations contained in pleadings and the statements made by counsel do not constitute evidence. Hillhaven Corp. v. State ex rel. Manor Care, Inc., 565 S.W.2d 210, 212 (Tenn. 1978); State v. Aucoin, 756 S.W.2d 705, 716 (Tenn. Crim. App. 1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); Trotter v. State, 508 S.W.2d 808, 809 (Tenn. Crim. App.), cert. denied (Tenn. 1974). As this Court said in Trotter: "While it is true that a lawyer is an officer of the court, his statements of the extra-judicial facts made in the course of argument, when not under oath as a witness and not subject to cross-examination proves nothing." 508 S.W.2d at 809.

Given the state of the record, this Court cannot find the trial court abused its discretion or the defendant was denied a constitutional right as he claims. He had every opportunity to present evidence or ask questions of the defense witnesses heretofore mentioned to develop his theory. He failed to do this. Moreover, the trial court specifically found during the hearing on the motion for a new trial the defendant was fully capable of assisting counsel with his defense. As the record reflects, the trial court observed the defendant during the course of the trial. The court stated its determinations were based upon its observation of the interaction between counsel and the defendant and the representations made by defense counsel. The record also reflects the trial court took steps to make the pain medication available to the defendant when the matter was brought to the court's attention.

This issue is without merit.

6

## II.

The defendant contends that his sentence was excessive. He argues the trial court erred first, in using two enhancing factors and second, in weighing the enhancing factors against the mitigating factors to arrive at the mid-range sentence of twenty years. The defendant claims he should have received the minimum fifteen-year sentence.

## A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

7

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

**B.**

The trial court found evidence supporting three enhancing factors: the defendant had a previous history of criminal behavior, Tenn. Code Ann. § 40-35-114(1); the defendant possessed a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9); and the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(15).

The defendant challenges two of the enhancement factors applied by the trial court. The defendant concedes that the use of a firearm during the commission of the act was a proper factor.

**(1)**

The defendant contends enhancement factor Tenn. Code Ann. § 40-35-114(1) was improperly used. He argues the trial court gave this factor too much weight because his prior felony conviction for third degree burglary was twenty years old.

The trial court also noted a 1988 speeding offense which did not merit much weight; a 1981 charge of public intoxication described as a "rather old" offense which was "not shocking," and did not carry much weight; and a 1981 charge of disorderly conduct which again did not carry much weight with the court. The third degree burglary conviction was more significant, the trial court said. The court noted that the 46-year-old defendant also had a juvenile record which included breaking into parking meters, breaking and entering, and auto theft.

The court also cited the defendant's admitted alcohol and marijuana abuse which increased after his accident in 1991. The defendant admitted to the presentence investigation officer he smoked two or three marijuana cigarettes every other day after he

8

was unable to work. He also admitted to the officer that in the 1970s he abused Valium, Librium, alcohol, speed, acid, marijuana, and Dilaudid.

The enhancing factor refers to "criminal behavior" in addition to criminal history. There is no per se rule in Tennessee barring consideration of unadjudicated conduct. State v. Michael Robinson, Cocke County No. 03-C-01-9510-CC-00303 (Tenn. Crim. App., Knoxville, June 24, 1997), application to app. pending; see also State v. Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). There were other acts committed by the defendant which support this factor that were not considered by the trial court. The defendant admitted during his trial testimony he gave his sons Valium, a controlled substance. The evidence adduced during the trial indicated the defendant stole the gun used in the shooting of his son and a videocassette recorder from a friend's house in a neighboring county. This occurred several years prior to the shooting.

Given the defendant's prior encounters with the law and continued involvement in illegal drugs, the trial court properly applied this factor to enhance the sentence within the appropriate range.

The issue is without merit.

**(2)**

The defendant takes issue with the trial court's use of the abuse of trust factor. Tenn. Code Ann. § 40-35-114(15). During the sentencing hearing, the trial court noted the 17-year-old victim was a juvenile, under the custody of his parents, and lived at home. While acknowledging this factor is most often applied to crimes involving younger victims, the trial court said it was applicable in this case.

The defendant argues the factor was inappropriate because the facts demonstrated the defendant had lost control over his son who had stopped attending school, was using illegal drugs, and was driving without a driver's license. Moreover, there were no facts which established the defendant held a position of trust or control over the victim other than a biological connection.

In State v. Kissinger, the Tennessee Supreme Court said the abuse of trust factor:

> requires a finding, first, that defendant occupied a position of trust, either public or private. The position of parent,

9

> step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith. If the evidence supports that finding, then the court must determine whether the position occupied was abused by the commission of the offense. Ordinarily, only the first question will pose a difficulty for the court.

State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). See also State v. Mario Gutierrez, Hardin County No. 02-C-01-9502-CC-00043 (Tenn. Crim. App., Jackson, May 17, 1997), application to app. pending (This Court said this factor could be used between two adults. "Members of a household are in a special position of trust with respect to one another.").

The defendant testified he supported the family when he was able to work. After he suffered the disabling injury, his worker's compensation benefits supported the family. He told the jury he had normal teenage conflicts with his son. He stated he played baseball with his son, and he was listening to music with both sons just before the shooting.

The most telling evidence in support of this factor occurred when the defendant initially produced his gun, pointed it at the floor in front of his son, then raised it to his son's groin and then to his son's eye. Justin remained in place throughout and asked his father, "[A]re you going to shoot me, Dad?" His inaction and his question indicate that he did not believe his own father would actually harm him.

As the victim's father, the defendant occupied a position of trust. Children, even teenagers, trust their custodial parents to care for and protect them. The trial court properly applied this factor to enhance the sentence within the appropriate range.

This issue is without merit.

### C.

The trial court found eight mitigating factors: the defendant located and led authorities to the gun thus providing some assistance, Tenn. Code Ann. § 40-35-113(10); the defendant gave a statement that could be considered a declaration against interest,

10

Tenn. Code Ann. § 40-35-113(10); and because of unusual circumstances the defendant did not have a sustained intent to violate the law, Tenn. Code Ann. § 40-35-113(11).

Under Tenn. Code Ann. § 40-35-113(13) "catch all" provision, the court found the following: (a) the defendant expressed some remorse, (b) the defendant had a back injury, (c) alcohol and drugs were being ingested by the defendant, (d) the defendant had psychiatric and physical problems, and (e) the defendant has some family in the area that will support his efforts at rehabilitation.[1]

## (1)

The trial court said he did not give the mitigating factors much weight. As for the lack of sustained intent, the trial court noted that the surviving son said he was told the gun was not for him, implying that it was for his brother. Thus, there was some evidence of sustained intent.

Regarding the effect of the ingestion of alcohol and drugs, the court stopped short of saying that the shooting resulted from this but found it a mitigating factor. The court said the substances may have given the defendant "courage" to shoot. This Court notes the voluntary consumption of alcohol is not a mitigating factor. Tenn. Code Ann. § 40-35-113(8). See State v. Johnny Lockhart, Roane County No. 03-C-01-9512-CC-00392 (Tenn. Crim. App. Knoxville, February 27, 1997), application to app. pending; State v. Johnny Robinson, Madison County No. 02-C-01-9505-CC-00126 (Tenn. Crim. App., Jackson, February 26, 1996). The defendant's psychiatrist who prescribed the medication said he told his patient not to consume alcohol with his medication.

---

[1]In the written order filed November 8, 1995 denying the motion for new trial, the court found that the defendant's work as a truck driver and his employment history fell under Tenn. Code Ann. § 40-35-113(13). This was not clearly identified as a mitigating factor during the sentencing hearing on July 29, 1995 although the trial judge mentioned the defendant's work as a truck driver during the hearing. It is settled law in Tennessee that when there is a conflict between the transcript and court records, the transcript controls. State v. Zyla, 628 S.W.2d 39 (Tenn. Crim. App. 1981); Helton v. State, 195 Tenn. 36, 255 S.W.2d 694 (1953), cert. denied, 346 U.S. 816, 74 S.Ct. 28, 98 L.Ed. 343 (1953); Percer v. State, 118 Tenn. 765, 103 S.W. 780 (1907).

Furthermore, the fact that he had been employed would not entitle him to a reduction in his sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

With regard to the defendant's psychiatric and physical problems, the court refused to find that these problems were the actual cause of the shooting. The court said he rejected any argument that there was an effect on culpability because the jury by its verdict had rejected this theory at trial.

Finally, the court said he only gave "some weight" to the factor the defendant's mother would support rehabilitation.

**(2)**

With the presence of both enhancing and mitigating factors, the trial court is instructed to begin at the minimum sentence, enhance the sentence within the range as appropriate and then reduce the sentence within range as appropriate for mitigating factors. Tenn. Code Ann. § 40-35-210(6)(e). In this case, the range for a Class A felony is fifteen to twenty-five years. The trial judge acknowledged the purposes and principles of sentencing. He explained the requirement to begin with the minimum sentence and then increase for enhancement and lower for mitigation. After a thorough sentencing hearing in which the court discussed all these aspects, the trial court sentenced the defendant to a mid-range sentence of twenty (20) years. This Court is of the opinion the length of the sentence imposed by the trial court is reasonable.

The weight to be given to enhancement and mitigating factors rests within the sound discretion of the trial court. State v. Reiko Nolen, Dyer County No. 02-C-01-9601-CC-00008 (Tenn. Crim. App., Jackson, August 2, 1996), per. app. denied (Tenn. 1997). The trial court stated the weight given the factors in this case. This Court is of the opinion the trial court did not abuse its discretion when assessing the weight to be given the factors.

12

The issue is without merit.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
CURWOOD WITT, JUDGE