**Ronnie FAIRBANKS, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

April 1, 1974.

Roger E. Jenne, Elliott, Goode, Jenne & Varnell, Cleveland, for petitioner.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Earle G. Murphy, Dist. Atty. Gen., Cleveland, for respondent.

OPINION

DYER, Chief Justice.

Ronnie Fairbanks, referred to herein as defendant, has been convicted of armed robbery, receiving a sentence of ten years. The Court of Criminal Appeals has reversed and remanded, sustaining an assignment of error that the jury in its deliberations considered the testimony of a member of the jury panel, which was contrary to the evidence introduced at the trial. We granted certiorari primarily to consider this assignment and will detail only that evidence necessary for this purpose.

On the night of May 27, 1972, the Quick Check Market, located in Cleveland, Bradley County, Tennessee, was robbed by two armed men, who left the scene in an automobile. Upon indictment for this crime defendant, at the trial, presented the defense of alibi.

The witness, Mrs. Walker, who was operating this market at the time, testified the robbery took place about 10:50 o'clock, P.M. The police received a report of the robbery at 10:47 o'clock, P.M.

The witness, Charles Davis, was a member of the Cleveland Police force and on this night was to go on duty at 11:00 o'clock, P.M. This witness testified he got out of his car at 10:55 o'clock, P.M., and went into the Grand Lunch, a restaurant across the street from the police station, where he saw and spoke to Ronnie Fairbanks. This witness gave his opinion it was a mile or a mile and a half from the Grand Lunch to the Quick Check Market, and it would take a person approximately thirty to forty-five minutes to walk this distance or approximately ten minutes to drive it in an automobile.

The defendant introduced this testimony of Charles Davis to support his alibi, arguing since the robbery took place at 10:50 o'clock, P.M., and defendant was seen at 10:55 o'clock, P.M., inside the Grand Lunch, which is a ten minute drive from the Quick Check Market, then defendant could not have been at this market at the time of the robbery.

Upon the motion for a new trial on this assignment of error, the trial judge recalled the jury, all reporting except one who was in the hospital. Questioning by the judge revealed several of the jurors lived in this area and were familiar with this road from the Quick Check Market to the Grand Lunch restaurant and several jurors did express their opinion based on their personal knowledge that at this time of night this distance could be driven in four minutes. Two of the jurors testified this information helped them to some extent in reaching their decision of guilty.

In reversing and remanding on this assignment of error the majority opinion of the Court of Criminal Appeals cited Lee v. State, 121 Tenn. 521, 116 S.W. 881 (1908), and cases cited by this opinion. The opinion quotes the following from Lee v. State, supra:

The next line is composed of cases wherein the court held that the affidavit of jurors might be introduced for the purpose of showing that a member of the jury had communicated to his fellow jurors facts not submitted to them on the trial by the testimony of witnesses; in other words, cases wherein the jury had themselves testified to their fellows after, they had been impaneled.

In support of the above statement, Lee v. State, supra, cites: Booby v. State, 12 Tenn. 111 (1833); Donston v. State, 25 Tenn. 275 (1845); Sam v. State, 31 Tenn. 61 (1851); Nolen v. State, 39 Tenn. 520 (1859); Wade v. Ordway, 60 Tenn. 229 (1873); Morton v. State, 69 Tenn. 498 (1878); Whitmore v. Ball, 77 Tenn. 35 (1882); Nile v. State, 79 Tenn. 694 (1883);

Ryan v. State, 97 Tenn. 206, 36 S.W. 930 (1896); Irvine v. State, 104 Tenn. 132, 56 S.W. 845 (1900); Street Railway & Telephone Companies v. Simmons, 107 Tenn. 392, 64 S.W. 705 (1901).

It should first be noted Lee v. State, supra, was decided on what is termed in that opinion as the "third line" of cases; that is, where it is sought to impeach a jury verdict by showing erroneous reasons or grounds which actuated or controlled the jury in arriving at its verdict. The Lee case itself is not in point on the issue sub judice.

In Booby v. State, supra, the first of these cases, the defendant was convicted of receiving stolen property, to-wit: a rifle. During deliberation, one of the jurors stated to his fellow jurymen: "the defendant had stolen a hog in the county; and made other statements from what he had heard, and verified before them . . . .", which were statements in regard to matters upon which no evidence had been given. The conviction was set aside as being repugnant to Article 1, Section 9 of the Constitution of Tennessee, whereby the accused "hath a right to be heard by himself and his counsel and to meet the witnesses face to face." This quote is from the Constitution of 1834, but under Article 1, Section 9 the same rights of an accused are preserved.

In Sam v. State, supra, the issue was whether the venue was in Anderson or Roane County upon which issue a great deal of proof had been entered pro and con. During jury deliberations on this point, one of the jurors stated he knew of his own knowledge the place where the crime was committed was in Anderson County. This Court set this verdict aside holding from such testimony given in the jury room the law will presume prejudice.

Morton v. State, supra, involved a conviction for larceny. One of the jurors during deliberations stated "that the prisoner had heretofore stolen sheep, money and other things from his father." This Court reversed.

Nile v. State, *supra*, involved a conviction for petit larceny. Upon jury deliberations one of the jurors stated "that he had been a juror before in a case against Peter Nile about some fodder; that it was very common for Peter to be in court, or that he was here every few courts with some charge against him, and that he believed he (defendant) ought to be convicted in this case." This Court in reversing this conviction said:

It has repeatedly been held in this State that testimony given to a jury after it has left the presence of the Court vitiates a verdict because it is not given on oath, and is given without the knowledge of those to be affected by it, and who have, therefore, no opportunity of meeting and repelling it. 79 Tenn. at 695.

There is a material factual difference as to the statements made by a juror in the four cases above mentioned and the statements made in the case sub judice. In the four mentioned cases the jurymen made statements to their fellow jurymen in regard to matters, the substance of which was in no way put in evidence during the trial. In the case at bar the statements made by jurors in regard to the time element in driving from the Quick Check Market to the Grand Lunch was in regard to a matter put in evidence at the trial. While this difference is not per se decisive of the matter, it does place the statements made by the jurors in the case at bar in a different category from statements made in the other four cases.

In 23A C.J.S. Criminal Law § 1373, we find the following:

The jury may use their common knowledge and experience in deciding whether a fact is logically deducible from the circumstances in evidence, or in making reasonable inferences from the evidence, and may test the truth and weight of the evidence by their own general knowledge and judgment derived from experience, observation, and reflection; but neither jurors nor judges when acting as arbiters of guilt are permitted to base their decisions on the existence or non-existence of facts according to their personal beliefs or experiences, but only on facts established by legal and competent evidence or on inferences deducible from such proven facts as are authorized by law. Within proper limitations jurors may call on common knowledge and experience in arguing with fellow jurors.

C.J.S., in support of the above statement, cites the case of Trousdale v. State, 168 Tenn. 210, 76 S.W.2d 646 (1934). In the *Trousdale* case we held:

Courts and juries have a right to draw upon their experience, knowledge, and observation with respect to the habits and conduct of their fellow men.

In De Rossett v. Malone, 34 Tenn.App. 451, 239 S.W.2d 366 (1950), the Court held estimates of time and distance are proper matters to be considered and weighed by a jury in the light of common sense and experience.

As we have noted, the statements made by several members of the jury to their fellow jurymen that a person at the particular time in question (10:50 o'clock, P.M.), could drive from the Quick Check Market to the Grand Lunch in four minutes was in regard to testimony given at the trial. It is pertinent here to note the jury had before it testimony the robbers left the Quick Check Market "in a car just flying."

We view these statements made by these jurors from their experience and observation as no more than testing the truth and weight (credibility) of the testimony of the witness Charles Davis. Jurors are not bound to accept uncontradicted testimony if in the light of their common knowledge and experience they find such incredible.

We have examined all other assignments of error and agree with the Court of Criminal Appeals they are without merit.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court affirmed.

CHATTIN, McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.