IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

## STATE OF TENNESSEE v. ALAN LEONARD SMITH

**Direct Appeal from the Criminal Court for Anderson County**
**No. 98CR0198     James B. Scott, Judge**

**No. E2000-01891-CCA-R3-CD**
**October 19, 2001**

The Defendant was convicted of driving under the influence (D.U.I.) second offense, sentenced to fifty days in jail, and ordered to pay a $2,500.00 fine. The Defendant now appeals, arguing the following: (1) that there was insufficient evidence to convict him of D.U.I., (2) that the trial court erred in admitting the breath alcohol results, and (3) that the trial court erred in not granting a new trial based upon newly discovered evidence. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Michael W. Ritter, Oak Ridge, Tennessee, for the Appellant, Alan Leonard Smith.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; James N. Ramsey, District Attorney General; and Janice G. Hicks, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

FACTS

At approximately 8:30 p.m. on February 27, 1998, Officer Jason Benjamin of the Oak Ridge Police Department was on patrol and noticed a pick-up truck with a headlight that was not working. Benjamin followed the vehicle and turned on his blue lights in order to stop the vehicle. Benjamin testified that he was going to issue the driver a repair order. The driver of the vehicle continued for approximately 150 yards before stopping in a parking area beside an apartment complex.

When Benjamin approached the vehicle, he noticed that the driver was having a hard time standing and that as he turned to face Benjamin, the driver "fell into his door." Benjamin explained

to the driver that he was being stopped because one of his lights was out. The driver walked around the vehicle to see for himself, and as he did so, Benjamin noticed that the driver smelled of alcohol. Benjamin also noticed that the driver's eyes were bloodshot, that he was unsteady on his feet and that his speech was slurred. Benjamin called for backup and told the driver that he was going to issue him a repair order. Benjamin asked the driver for identification, for which the Defendant "fumbled excessively." As Benjamin finished filling out the repair order, Officer Carl Webb arrived. Benjamin testified that he asked the Defendant if he had had anything to drink that night, and the Defendant replied, "a few."

Benjamin then administered a series of field sobriety tests to the Defendant. The Defendant informed Benjamin that he had a slipped disc; however, he told Benjamin that it would not keep him from standing or walking. As Benjamin explained the tests, the Defendant dropped his repair order. Benjamin testified that the Defendant had trouble picking it up. Benjamin then administered the "walk and turn" test to the Defendant. This test entailed the Defendant keeping his arms down to his side and placing his right foot in front of his left foot with the right heel touching the left toe. However, before Benjamin could finish explaining the test, the Defendant began to lift his right foot off of the ground. The Defendant held his foot up for a couple of seconds and then began to fall to the right. The Defendant told Benjamin that he couldn't do the test. Benjamin agreed that the Defendant was too unsteady to perform the test.

Benjamin next asked the Defendant to perform the "one-leg stand." Benjamin told the Defendant to "put his heels together touching with his feet at about a 45 degree angle or something like that. And when [Benjamin] tell[s] him to, [to] lift whichever foot he desires so that the heel of that foot is about six inches off the ground." Benjamin told the Defendant to keep his hands to his side, look at the foot he was lifting and count from one to thirty. However, Benjamin testified that instead of lifting his foot about six inches from the ground, the Defendant lifted his leg straight out in front of him and began to fall over. According to Benjamin, the Defendant told him that he could not perform that test either.

The final test that Benjamin asked the Defendant to perform involved the Defendant holding his hand out, palm up; touching his thumb to his first finger; counting up to four; and then counting back to one. However, instead of touching each finger, the Defendant closed his hand together "like he was squeezing a ball." Benjamin informed the Defendant that he was doing the test incorrectly. The Defendant tried again and still could not do it correctly. Benjamin testified that the Defendant told him that he could not perform the test.

Benjamin informed the Defendant that he was placing him under arrest for D.U.I. and did a "search incident to arrest" of the Defendant's person. Benjamin then handcuffed the Defendant and placed him in the back of the patrol car. Benjamin testified that he was at the scene approximately fifteen minutes. Benjamin then locked the Defendant's truck doors and drove to the Oak Ridge Police Department. Benjamin testified that he spent approximately an hour at the police department filling out paperwork, taking the Defendant's picture and fingerprinting the Defendant. After the booking process was complete, Benjamin took the Defendant to the Anderson County jail in Clinton

for a breathalyser test. According to Benjamin's notes, they left the Oak Ridge Police Department around 10:20 p.m. and arrived at the Anderson County jail at 10:45 p.m.

Once at the jail, Benjamin took the Defendant into the room with the Intoximeter and sat down. Benjamin testified that he informed the Defendant before they arrived at the jail about having a blood-alcohol test, and the Defendant agreed to the test. However, the Defendant did not sign the form acknowledging that he agreed to the test. The form listed the time of arrest at 9:01 p.m. Because Benjamin was not certified to operate the breathalyser machine, he called the Clinton Police Department dispatch to find someone who could operate the machine. Benjamin testified that Officer Mike Kelley arrived about an hour and a half later to administer the test. Benjamin testified that he and Kelley observed the Defendant for twenty minutes before Kelley administered the test. Benjamin did not remember telling the Defendant that he could have an independent test. Benjamin testified that the Defendant did not complain of any injuries or ailments while in his custody.

On cross-examination, defense counsel asked Benjamin if he recalled testifying at the preliminary hearing that Kelley started the test immediately after arriving at the station and gathering some information about the Defendant. Benjamin testified that he did not remember what he said at the preliminary hearing. However, he stated that he was sure that he observed the Defendant for twenty minutes before Kelley performed the breathalyser test.

Officer Carl Webb of the Oak Ridge Police Department testified that on February 27, 1998, he received a call from dispatch to back up Officer Benjamin on a traffic stop. When Webb arrived on the scene, he observed Officer Benjamin administer field sobriety tests on the Defendant. Webb testified that on the walk and turn test, the Defendant did not follow instructions and tried to lift his leg up in the air; and on the second test, the Defendant actually fell while he was trying to perform the test. Webb did not mention the finger-counting test. According to Webb, the Defendant was unsteady on his feet and "had the side-to-side walk." Webb also stated that the Defendant was "thick tongued" and that he smelled of alcohol.

Mike Kelley testified that on February 27, 1998, he was a sergeant with the Clinton Police Department. Kelley testified that he was working the midnight shift when he received a dispatch that an Oak Ridge officer had arrested a subject and needed someone to run the Intoximeter. Kelley testified that he was a certified operator of the machine and received his training on the Intoximeter EC-IR. Kelley testified that he was not sure what time he arrived at the jail.

Upon arriving at the jail, Kelley, as a matter of standard practice, informed Officer Benjamin that they must observe the Defendant for twenty minutes before administering the Intoximeter. The purpose of this observation is to make sure that the subject does not "belch or regurgitate or anything of that nature." Kelley testified that he and Benjamin observed the Defendant for twenty minutes with no unusual occurrences, and then he administered the test. Officer Kelley obtained information about the Defendant and typed it into the computer. The machine then did a "blank test" to insure that it was working properly. Kelley testified that after the blank test, which indicated that there were no problems, he advised the Defendant to take a deep breath and blow into the machine. Kelley

testified that he gave the results to Officer Benjamin and left. The slip with the results showed the time of the test to be 12:47 a.m. The Defendant's blood alcohol content registered at .17 percent. Kelley did not advise the Defendant that he had a right to an independent test.

Officer Kenneth Sharp of the Anderson County Sheriff's Department testified that he is custodian of the records for the Intoximeter EC-IR machine that is maintained at the Anderson County jail. Sharp testified that he had in his possession all of the Tennessee Bureau of Investigation (T.B.I.) certifications up to the date of trial for that particular machine. Sharp testified that the machine is calibrated and certified by the T.B.I. approximately every three months.

Doris Stooksbury, the records custodian at the Anderson County Sheriff's Department, testified regarding the jail log. According to Stooksbury, an Oak Ridge police officer entered the building with the Defendant at 12:00 a.m. Thereafter, the Defendant was immediately booked into the jail facility. Stooksbury agreed that one of the records documenting the bonding company and the Defendant's release on bond was incorrect. Stooksbury testified that she could not vouch for the accuracy of the information entered in the records.

The forty-eight year old Defendant testified that on February 27, 1998, he worked for Frank Bean and Son Construction in Harriman, Tennessee. The Defendant testified that he left work around 4:00 p.m., went to the company's office located on Highway 61 between Oak Ridge and Clinton to pick up his check and then went to Tennessee State Bank in Oak Ridge to cash his check. According to the Defendant, he left the bank around 5:00 p.m. and went to his apartment where he changed clothes and took some Tylenol for his back. The Defendant testified that he had pulled a muscle in his back earlier in the day lifting sheetrock. The Defendant stated that "[i]t was real hard to move, and [he] couldn't walk very well." The Defendant said that after changing clothes and eating, he went to Jefferson Tavern, arriving around 6:15 or 6:30 p.m. The Defendant testified that he had six beers and then left to go home around 8:45 p.m.

The Defendant testified that as he was going home, Officer Benjamin pulled him over and told him that one of his headlights was not working. The Defendant asked if he could check the headlight himself. Benjamin said that was fine, so the Defendant walked to the front of the car. The Defendant said that he might have had his hand on the truck because his back was hurt, and he testified that he was walking "a little slow." The Defendant testified that Benjamin handed him a repair order, but the Defendant dropped it. The Defendant stated that he reached down and "picked it up slowly." The Defendant said that approximately five to ten minutes later, Officer Benjamin called for back-up and asked him to perform several field sobriety tests. The Defendant testified that he told Benjamin that he could not perform the walk-and-turn test because of his back. Benjamin then asked the Defendant to perform another test requiring him "turn[] your feet on a 45 and lift[] one leg up." The Defendant testified that he told Benjamin that he could not perform that test either. The Defendant claimed that he never fell down while trying to perform the test. The Defendant testified that Benjamin never asked him to do the "finger touching" test.

According to the Defendant, following the sobriety tests, Benjamin placed him under arrest and took him to the Oak Ridge Police Department. The Defendant estimated his time at the police station to be around two and a half to three hours, whereupon Benjamin transported him to the Anderson County Detention Facility. The Defendant testified that within a minute or two of Officer Kelley's arrival at the station, Officer Kelley administered the breathalyser to the Defendant.

## ANALYSIS

### A. Sufficiency of the Evidence

The Defendant argues that insufficient evidence was presented at trial to convict him of D.U.I. Specifically, the Defendant argues that there was no evidence in the record to reflect what his blood alcohol level was when he was arrested at 8:47 p.m. The Defendant argues that the jury could only speculate as to his blood alcohol concentration at the time of the stop and that the State failed to offer any extrapolation testimony by an expert.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.2d 389, 392-93 (Tenn. Crim. App. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant was convicted of D.U.I. pursuant Tennessee Code Annotated § 55-10-401(a)(2),[1] which provides that

---

[1]The Defendant was charged with two alternate counts of D.U.I.: (1) that he was driving while under the influence of an intoxicant, Tenn. Code Ann. § 55-10-401(a)(1); and (2) that the alcohol concentration of his blood was

(continued...)

[i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while . . . [t]he alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

There was sufficient evidence for a reasonable jury to conclude that the Defendant's blood alcohol level was at least .10 percent at the time of his arrest. The Defendant admitted that he drank six beers within a two hour period immediately before he was stopped. Officers Benjamin and Webb both testified that the Defendant appeared to be intoxicated at the time of his arrest and that he was unable to perform any of the field sobriety tests. The Defendant's blood alcohol concentration was tested at 12:47 a.m. and determined to be .17 percent. Based on the facts and circumstances of this case, it is reasonable to assume that the Defendant was intoxicated while driving his truck. Our supreme court has previously held that

[t]he jury may use their common knowledge and experience in deciding whether a fact is logically deducible from the circumstances in evidence, or in making reasonable inferences from the evidence, and may test the truth and weight of the evidence by their own general knowledge and judgment derived from experience, observation, and reflection; but neither jurors nor judges when acting as arbiters of guilt are permitted to base their decisions on the existence or non-existence of facts according to their personal beliefs or experiences, but only on facts established by legal and competent evidence or on inferences deducible from such proven facts as are authorized by law. Within proper limitations jurors may call on common knowledge and experience in arguing with fellow jurors.

Fairbanks v. State, 508 S.W.2d 67, 69 (Tenn. 1974); see also Trousdale v. State, 76 S.W.2d 646, 647 (Tenn. 1934). We conclude that the jury's determination that the Defendant's blood alcohol concentration was at least .10 percent at the time of his arrest to a be a reasonable inference from the evidence presented. See Fairbanks, 508 S.W.2d at 69.

B. Admission of Breath Alcohol Test Into Evidence

The Defendant argues that the trial court erred in admitting the results of the blood alcohol test into evidence. Specifically, the Defendant argues that the State did not meet the requirements for admissibility set out in State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992). In Sensing, our supreme court adopted the following test regarding the admission of blood alcohol tests:

[T]he testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing

---

[1] (...continued)
more than .10 percent, id. § 55-10-401(a)(2). The jury found him not guilty of count one.

-6-

instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Id.

The Defendant argues (1) that the State failed to establish that the machine was working properly when the breath test was performed, (2) that the State failed to ask whether the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (3) that the State failed to present evidence that the examiner followed the prescribed operational procedure, and (4) that he was not observed for the requisite twenty minutes. See id.

Officer Kelley testified that he was a certified operator of the Intoximeter EC-IR and that he followed the standard operating procedures required by the T.B.I. and his department in administering the test to the Defendant. Officer Kenneth Sharp testified that the machine that was used was calibrated and certified by the T.B.I. approximately every three months. Kelley testified that he and Officer Benjamin observed the Defendant for the requisite twenty minutes before obtaining information from the Defendant to type into the computer. Before the test was actually performed, the Intoximeter ran a "blank test" to insure that it was working properly. The machine gave a printout indicating that it was functioning as it should. Kelley then administered the test to the Defendant. Although some evidence was presented which contradicted the testimony of Officers Kelley and Benjamin regarding the amount of time that they observed the Defendant, the trial court obviously found the testimony of the officers to be credible. Thus, we conclude that the test was properly admitted into evidence.

### C. Newly Discovered Evidence

The Defendant argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Specifically, the Defendant refers to a radio log documenting the time that Officer Kelley arrived at the jail.

A new trial on the basis of newly discovered evidence should be granted in cases where (1) the defendant has been reasonably diligent in obtaining evidence, (2) the materiality of the new evidence is apparent, and (3) the evidence is likely to change the result of the trial. State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). In order to be entitled to a new trial based on newly discovered evidence, a defendant must demonstrate that all three prongs of the test have been met. See State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994). The decision to grant or deny a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial judge. State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). Accordingly, our standard of review

is abuse of discretion. See State v. Mead, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996).

"[T]he trial court may determine the credibility of any newly discovered evidence, and if the court concludes that the evidence would not be worthy of belief by the jury, the court should deny the motion for new trial." State v. Marlon D. Beauregard, No. W1999-01496-CCA-R3-CD, 2000 WL 705978, at *4 (Tenn. Crim. App., Jackson, May 26, 2000) (citing Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977)). Additionally, it is a well-settled rule that newly discovered impeachment evidence will not constitute persuasive grounds for a new trial unless the impeachment evidence is so crucial to the issue of the Defendant's guilt or innocence that the admission of the newly discovered impeachment evidence will probably result in an acquittal. See Singleton, 853 S.W.2d at 496; State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985).

In this case, the Defendant sought a new trial based on an affidavit by Rachel Johnson, the dispatcher for the Clinton Police Department. According to Johnson, the department's radio dispatch log indicated that Officer Kelley was dispatched to the jail at 12:27 a.m. on February 28, 1998, arrived at the jail at 12:49 a.m., and returned to duty at 12:56 a.m. The trial court denied the Defendant's motion, stating that the test was challenged at the time of the trial. According to the trial court, "[t]his newly discovered evidence is additional accumulated - impeachable - evidence which in this Court's opinion should not be the basis for granting a new trial." The trial court also stated that the information was available to defense counsel before trial.

We conclude that the trial court properly denied the Defendant's motion for a new trial based on Johnson's affidavit. Although the evidence may have been material to the case, the Defendant failed to show that reasonable diligence was exercised in obtaining the evidence. According to the trial court, the evidence was available to the defense before the trial. Johnson certified that a contemporaneous recording in the log was required by departmental policies and procedures. Moreover, it is unlikely that the new impeaching evidence would have necessarily changed the result of the trial. There was substantial testimony at trial regarding the timing of the test and the observation period. The log sought to be introduced indicated that Officer Kelley arrived at the jail at 12:49 a.m.; however, the test results of the breathalyser indicated that Kelley administered the test at 12:47 a.m. Thus, this evidence was not so crucial to the issue of the Defendant's guilt or innocence that the admission of the newly discovered impeachment evidence would probably have resulted in an acquittal. See Singleton, 853 S.W.2d at 496; Rogers, 703 S.W.2d at 169.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE