IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2003

**STATE OF TENNESSEE v. STACY R. DOWELL**

**Appeal from the Criminal Court for Johnson County**
**No. 3953    Lynn W. Brown, Judge**

**No. E2002-01918-CCA-R3-CD**
**February 24, 2003**

The defendant, Stacy R. Dowell, appeals as of right his conviction, following a bench trial before the Johnson County Criminal Court, for driving while his blood alcohol concentration was .10 or greater, a Class A misdemeanor. The trial court sentenced the defendant to eleven months, twenty-nine days with forty-eight hours to be served in the county jail and the remainder on probation. The defendant challenges the sufficiency of the evidence relative to his blood alcohol concentration. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, Jr. and NORMA MCGEE OGLE, JJ., joined.

H. Randolph Fallin, Mountain City, Tennessee, for the appellant, Stacy R. Dowell.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Anthony Wade Clark, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In the early morning hours of October 26, 2001, Deputy Richard Kyle Eller of the Johnson County Sheriff's Department was driving southbound on Highway 421 in Mountain City when he saw the defendant's truck and a second vehicle coming toward him in the northbound lane. Deputy Eller testified that the speed limit was forty miles per hour and that he believed the defendant was speeding. The defendant passed him, immediately turned left into a shopping center, and parked in front of a Hardee's restaurant. Deputy Eller turned around and parked beside the defendant but did not turn on his blue lights or his siren. He said he was not planning on issuing a citation to the defendant but wanted to talk to him.

Deputy Eller testified that when he spoke with the defendant, he noticed the odor of alcohol and that the defendant's speech was slurred. He said the defendant told him that the defendant had consumed a couple of beers. The defendant consented to a blood test at 3:10 a.m., and the laboratory report reveals that the defendant had a blood alcohol concentration of .13 percent. Deputy Eller said he found an open can of beer on the passenger's side of the defendant's truck. He said that the can was one-quarter to one-half full and that the defendant was the only one in the truck. On cross-examination, Deputy Eller acknowledged that the defendant properly executed a left turn into the shopping center, had no problems parking his truck, and understood and appropriately responded to all questions and directions. Deputy Eller did not recall whether the beer found in the defendant's truck was still chilled.

Deputy Eller initially testified at the suppression hearing and at trial that he encountered the defendant around midnight on October 26. The state recalled Deputy Eller following the defendant's proof, and he testified about the dispatcher's radio log for that night. The log reflects that Deputy Eller called in the defendant's driver's license number at 2:36 a.m. Officer Eller testified that he radioed the dispatcher with the defendant's driver's license number within minutes of first speaking to the defendant. He said he had the defendant perform field sobriety tests, he inventoried the defendant's truck, and then he took the defendant directly to the hospital. He estimated that it took twenty to twenty-five minutes from the time he spoke with the defendant until he transported him to the hospital. The log reveals that Officer Eller reported being en route to the emergency room at 3:03 a.m. and at the emergency room at 3:05 a.m. The laboratory report states that the defendant's blood was collected at 3:15 a.m.

Nineteen-year-old Kevin Fritts testified that he had been "four wheeling" with the defendant and others on the evening before the defendant's arrest. He said he saw the defendant drink two twelve-ounce cans of beer from someone's cooler over the course of the evening. He said that after the four wheeling, he followed the defendant in a separate car for about ten miles to a shopping center. He said he was traveling at the speed limit and keeping up with the defendant. He said he did not see the defendant weave or drive inappropriately.

Jason Moody testified that he had taken his truck four wheeling with the defendant from 11:00 p.m. until around 2:00 a.m. on the night the defendant was arrested. He said that before they went four wheeling, he saw three cans of beer in the defendant's truck. He said he saw the defendant drink one or two beers that night. He said that he did not think the defendant should not be driving. He said the defendant remained in the shopping center's parking lot in a patrol car for forty-five to fifty minutes.

At the conclusion of the bench trial, the trial court found that the defendant's blood was drawn within thirty to forty minutes of him driving his truck and that his blood alcohol concentration was .13 percent. Thus, it convicted the defendant of driving while under the influence of an intoxicant (DUI), specifically driving while his blood alcohol concentration was .10 or greater. See Tenn. Code Ann. § 55-10-401(a)(2). It noted that it would have had a problem with the sufficiency of the evidence if the defendant had been arrested at midnight with his blood not being tested until

over three hours later. Finally, the court observed that whether the defendant was impaired at the time he was driving was not relevant because the state was proceeding under § 55-10-401(a)(2). In that context, it remarked:

> [I]t looks like the test has become the jury when the–when the legislature passed this new law. And it becomes even different on July the 1st that the level is decreased to .08 percent, July 1st of next year. And what the legislature is trying to do is to get people to not drink and then drive. But, the law is that this report, although stipulated to, is admissible. It's reliable. And the court concludes that it is sufficient for a–for finding of guilt.

The defendant summarily contends that Tenn. Code Ann. § 55-10-401(a)(2) violates his right to a trial by jury because it substitutes a blood alcohol test result for a jury's finding of impairment without regard to the time lapse between the defendant's driving and the blood test. The state contends that the defendant has waived this issue by failing to provide either argument or citation to the record. See T.R.A.P. 27(a)(7). It also argues that § 55-10-401(a)(2) is not unconstitutional. We agree with the state that the defendant has failed to present any argument on the constitutionality of § 55-10-401(a)(2). Nevertheless, we believe that viewing the defendant's brief as a whole, he is actually challenging the sufficiency of the evidence of his conviction. In this respect, we hold that the evidence is sufficient and affirm the trial court's judgment of conviction.

The defendant's brief contains no argument section. His entire statement of his position, under the heading "**CONCLUSION**," is as follows:

> This case presents a very important issue for this Court. Is it the law of Tennessee that if a person is stopped in actual control of or operating a vehicle on the roads of Tennessee and his blood alcohol exceeds .10 no proof would be required as part of the State's burden of proof to show that the blood level was over .10 when driving, no matter how long after said operation the sample is taken. The Appellant asserts that State v. Robinson, 29 S.W.2d 476 and the right to a trial by jury indicates otherwise.
>
> The defense insists that is not the law and urge a reversal.

The appealing party's brief "shall contain" an "argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to authorities and appropriate references to the record . . . relied on." T.R.A.P. 27(a)(7). This court will treat as waived issues unsupported by "argument, citation to authorities, or appropriate references to the record." Tenn. R. Crim. P. 10(b). The defendant has fallen short in providing us with any argument to review.

Nevertheless, we believe that a liberal reading of the entire brief reveals that the defendant is actually arguing that the trial court did not require the state to prove that his blood alcohol content was .10 or more at the time he was driving. In his statement of the case, he summarizes his theory at trial: A "blood result that was secured sometime after the driving stopped was insufficient to prove the alcohol level in Appellant's blood was .10 or more when he was driving or in physical control" of the truck. He asserts that because blood alcohol levels may be either rising or falling in the time between the driving and the collection of the blood sample, the state must "show by computed proof" how the test results correspond to the defendant's blood alcohol content at the time he was driving.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Tenn. Code Ann. § 55-10-401(a)(2) provides in pertinent part that

> [i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> . . . .
>
> (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

The plain language of the statute does require the state to show that the defendant's blood alcohol concentration was .10 or over at the time the defendant was driving.

The defendant essentially contends that the state's proof that his blood alcohol concentration of .13 percent at 3:15 a.m. on the 26th does not prove beyond a reasonable doubt that his blood alcohol concentration was .10 or more when he was driving some forty minutes earlier. In his closing argument at trial, he emphasized the fact that the deputy found a partially consumed can of beer in the defendant's truck. He argued that this evidence revealed that the defendant had been drinking alcohol while en route to the shopping center. He asserted that the alcohol he drank en route would have continued to be absorbed into his blood stream between the time he parked and

the time of the test, resulting in a greater blood alcohol concentration at 3:15 a.m. than at the time he was driving.

Viewing the evidence in the light most favorable to the state, Deputy Richard Eller and Kevin Fritts both testified that the defendant drove his truck to a shopping center parking lot on October 26, 2001. Deputy Eller said that when he spoke with the defendant shortly after the defendant parked by Hardee's, he smelled the odor of alcohol. The defendant admitted to Deputy Eller that he had consumed two beers that evening, and Deputy Eller found a partially consumed can of beer in the defendant's truck. Jason Moody testified that he was with the defendant from 11:00 p.m. to 2:00 a.m. and saw the defendant drink one or two beers. Deputy Eller's testimony, the dispatcher's log, and the laboratory report support the trial court's finding that the defendant's blood was drawn within about forty minutes of his driving. The defendant's blood had an alcohol concentration of .13 percent.

With regard to the forty-minute delay between the defendant's driving and the collecting of the blood sample, we note the following longstanding principles:

> "The jury may use their common knowledge and experience in deciding whether a fact is logically deducible from the circumstances in evidence, or in making reasonable inferences from the evidence, and may test the truth and weight of the evidence by their own general knowledge and judgment derived from experience, observation, and reflection; but neither jurors nor judges when acting as arbiters of guilt are permitted to base their decisions on the existence or nonexistence of facts according to their personal beliefs or experiences, but only on facts established by legal and competent evidence or on inferences deducible from such proven facts as are authorized by law."

Fairbanks v. State, 508 S.W.2d 67, 69 (Tenn. 1974) (quoting 23A C.J.S. Criminal Law § 1373); see also State v. Nesbit, 978 S.W.2d 872, 886 (Tenn. 1998). In waiving a jury, the defendant was acceding to the trial court's using its common knowledge and experience in determining the facts. In this respect, we believe the trial court, as the trier of fact, could infer that the defendant's blood alcohol content was at least .10 percent at the time he was driving.

First, we question the trial court's disregarding the defendant's condition at the scene. An officer's belief that a defendant is intoxicated and a defendant's failing field sobriety tests would be generally relevant to the issue of blood alcohol content. See, e.g., State v. Alan Leonard Smith, No. E2000-01891-CCA-R3-CD, Anderson County, slip op. at 6 (Tenn. Crim. App. Oct. 19, 2001) (holding evidence of the defendant's intoxication and a blood alcohol concentration of .17 percent four hours later supported the inference that his blood alcohol content was .10 or greater at the time he was driving); State v. Michael G. Waldrum, No. M1999-01924-CCA-R3-CD, Williamson County, slip op. at 4 (Tenn. Crim. App. Dec. 8, 2000) (holding evidence of defendant's slurred speech,

bloodshot eyes, poor performance on field sobriety tests, and admission that he had been drinking along with a blood alcohol concentration of .21 percent one and one-half hours after driving was sufficient to support jury's inference that defendant was driving with a blood alcohol content of .10 or more); State v. Lester Arnold Clouse, No. 01C01-9802-CR-00069, White County, slip op. at 7-8 (Tenn. Crim. App. Mar. 31, 1999), app. denied (Tenn. July 6, 1999) (holding evidence that defendant showed signs of intoxication when officer arrived on scene and failed field sobriety tests along with blood alcohol concentration of .14 percent one hour after driving was sufficient).

The evidence reflected that the defendant had the odor of alcohol and had admitted consuming two beers within three hours of speaking to Deputy Eller. In finding the defendant guilty, the trial court emphasized the fact that the test reflecting a .13 percent blood alcohol concentration occurred within forty minutes of the defendant's driving. Our supreme court has held that in order for breathalyzer results to be admitted without an expert, the evidence must show that "the motorist was observed for a requisite 20 minutes prior to the test." State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992). The forty-minute delay in the present case is not significantly longer than the twenty minutes the deputy would have had to spend observing the defendant for a breath test. The evidence is sufficient to support the defendant's conviction for DUI.

Based upon the foregoing and the record as a whole, we affirm the trial court's judgment of conviction.

_____
JOSEPH M. TIPTON, JUDGE