FILED

05/12/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 7, 2017 Session

## STATE OF TENNESSEE v. KALANDRA LACY

**Appeal from the Criminal Court for Shelby County**
**No. 14-04930     Carolyn Wade Blackett, Judge**

_____

### No. W2016-00837-CCA-R3-CD

_____

The defendant, Kalandra Lacy, appeals her Shelby County Criminal Court guilty-pleaded conviction of abuse of a corpse, arguing that the trial court erred by denying her bid for judicial diversion. Following a de novo review occasioned by the trial court's failure to consider on the record all the factors relevant to the denial of judicial diversion as well as the trial court's consideration of irrelevant factors, we conclude that the defendant is entitled to judicial diversion. We remand the case for entry of an order placing the defendant on judicial diversion under the same terms and conditions of her previously-imposed sentence of probation.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Vicki M. Carriker, Memphis, Tennessee, for the appellant, Kalandra Lacy.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 12, 2015, the defendant entered an open plea of guilty to one count of abuse of a corpse, a Class E felony. The State summarized the facts of the offense:

> [O]n October the 19th of 2014 officers started an investigation at the Gus's Fried Chicken on North Germantown Road in Bartlett, Tennessee. A motorist had found the remains of a deceased new born infant in the alley

there behind the restaurant. Officers located a clear plastic bag with what appeared to be blood inside the bag [and] an infant's body. The umbilical cord was attached to the infant, and it appeared that the body of the infant had been run over by a vehicle.

Officers traced this in their investigation to the interior of the restaurant to a woman's restroom inside. They were told that the defendant . . . was possibly pregnant although it was not known for sure by coworkers. The store employee was contacted and advised that there had been a miscarriage that had happened in the women's restroom and [the defendant] had left work early on that occasion. The officers tracked down the defendant. The defendant told officers that she knew why they were there. And she stated that she had had a miscarriage and had put the baby in the dumpster behind the Gus's restaurant. . . . She stated that she had placed the body of the infant in the plastic bag.

The Medical Examiner's Office of course examined the infant and they could not determine cause of death. They could not determine whether this was a live birth or not. There was no way to say medically whether the infant had been born alive. The defendant is not charged with homicide but abuse of a corpse which was the charge that the State could have proven in this case.

The State noted that the defendant "does qualify for diversion" but indicated that the "State is not agreeing to that."

At a hearing conducted that same day, the defendant, who had previously given birth to three children, testified that on October 19, 2014, she went to the restroom near the end of her shift and "had a miscarriage" inside the restroom. She said that her "baby came out. It wasn't moving or making any sounds or anything." She described the infant as "pretty small." She said that she "was weak" and "in shock." She described what happened next:

I just was thinking I just really want to go home. I just have to go home. And so I put the baby in the bag and put it in the dumpster and I told my manager I have to go. I had

a[n] accident. And of course he could see all the blood and stuff over me.

She said that she was "distraught, hurt and shocked and just weak all in one." The defendant said that she sat in her car "a while" because she "couldn't drive or anything." She eventually went home. The following morning, her mother came and took her to the hospital, where she was treated and released.

The defendant denied running over her child. She asked the trial court to grant judicial diversion so that the offense would not prevent her from obtaining "a good job" so that she could provide for her other children. She said that she knew that what she did was wrong.

During cross-examination, the defendant said she could not explain why she had done what she did, saying, "I can't give you an answer to why I did it. I was just in shock."

The trial court expressed incredulity at the defendant's lack of explanation for her actions and implored the defendant to offer more, saying, "This is the only time you're going to get a chance to go through this and you might as well tell me now because it will depend on how I rule on this. I don't care what the truth is. I just want to know what it is." The defendant adamantly denied that she acted out of a desire to get rid of the child. The defendant responded, "I just was really weak and tired and I just wanted to go home. . . . I knew I couldn't leave it in the bathroom. So that's why I took it to the dumpster." She said that she did not know how the child had gotten out of the dumpster but that the police had told her that "cats drug the infant out of the garbage." The trial court stated its belief that the conviction needed to be on the defendant's "record to let people know" that the defendant had "a problem" because the defendant could not "even tell [the court] why." The court indicated that the defendant needed "serious counseling" and expressed concern that the defendant was "likely to repeat the same behavior again." The trial court indicated that it was not prepared to rule on the defendant's request for judicial diversion. The court ordered the defendant to take parenting classes and undergo counseling and asked the defendant to provide "a written report from a doctor and a psychologist."

On July 28, 2015, the defendant asked the trial court for more time to complete the evaluation process requested by the trial court. The court then reset the case two more times before holding a sentencing hearing on April 13, 2016. During the

intervening eleven months, the defendant underwent two mental health evaluations[1] and attended counseling.

At the hearing, the trial court denied the defendant's request for diversion, ultimately concluding that the court "would want people to have notice" in the form of a felony conviction on the defendant's criminal record "that if for some reason, or another, something like this even remotely happened, again, due to this, everyone would be put on notice." The court expressed "a very, very deep concern" "for the safety of her children that she has now, any children she may have in the future," and stated that it was this concern that made the court "want to make sure that the records were accessible and not in terms of diversion, there was no mention of any of this." The court indicated that it had "thought about it" and had done "some outside research" on cases similar to the defendant's. The court said:

> There is a huge number, in terms of the increase of the number of women who are being prosecuted exactly for this same type of offense. And they are not going as far as we went on this case. They have a woman who has recently had a baby, or a miscarriage, or was pregnant and if they can find the fetus, or the baby, they are prosecuting murder one, across this country, in numbers that you would not believe. And I do not want the same thing to happen to her.

The trial court ordered that the defendant serve one year of "intensive" supervised probation.

In this timely appeal, the defendant asserts that the trial court erred by denying her bid for judicial diversion, arguing that the trial court failed to weigh and consider all the factors relevant to a determination of judicial diversion. The State contends that the trial court appropriately considered all the relevant factors and that the court's decision to deny judicial diversion based upon the circumstances of the offense was justified.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty

---

[1] The defendant's memorandum in support of her request for diversion indicated that she had had two evaluations, and both defense counsel and the court indicated that reports from both evaluations were included "in the jacket." Only one report appears in the record on appeal.

of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> "(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused."

*Id.* (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is

-5-

not appropriate." *Id.* Instead, "the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id.* at 328.

Here, the trial court indicated that it had reviewed the defendant's memorandum in support of her bid for judicial diversion, which included each of the factors relevant to the consideration of diversion, but the trial court did not consider each factor on the record and did not weigh the factors against each other or place an explanation of its consideration of each factor on the record. The trial court did not mention any of the applicable factors and focused exclusively on the circumstances of the offense and its own concerns about the potential of future harm to the defendant's children. Additionally, the trial court indicated that it had conducted "independent research" and had weighed this research heavily in the decision to deny judicial diversion. Consequently, the ruling of the trial court is not entitled to a presumption of reasonableness, and the abuse of discretion standard of review is "not appropriate." "Because, however, the record is sufficient for de novo review, we have chosen to address whether the denial of judicial diversion was appropriate in these circumstances, rather than remand the case for reconsideration by the trial court." *King*, 432 S.W.3d at 328.

The record clearly establishes that the 23-year-old defendant is qualified for judicial diversion. The defendant's social history weighs heavily in favor of a grant of judicial diversion. The defendant has no criminal record. The record contains no evidence that the defendant uses illegal drugs or that she consumes alcohol in excess. She possesses a high school diploma and some college credits toward her associate's degree. At the time of the hearing, the defendant had been gainfully employed for the entirety of her adult life. By the time of the hearing, the defendant had already lost one well-paying job as a result of her arrest in this case, but she had managed to obtain full time employment as an office assistant at a tax preparation office.

The defendant shares three children with her partner, Michael Baines, who was also the father of the deceased infant in this case, and the record indicates that she has the support of her mother and other extended family members. The family had never been the subject of an investigation or any other action by the Department of Children's Services. Although the trial court expressed a concern for the safety of the defendant's children, the record contains no evidence that might have given rise to such a concern. No evidence suggested that the defendant had ever harmed any of her children or that she had made a pattern of the behavior that gave rise to the charge in this case. Importantly, no evidence in the record indicates that the defendant caused the death of her infant in this case.

Medical records exhibited to the hearing established that the defendant's third child was born prematurely in December 2012 after the defendant suffered a "complete placental abruption." That child spent several weeks in the neonatal intensive care unit.

At the trial court's insistence, the defendant underwent a mental health evaluation. The defendant's sentencing memorandum actually states that the defendant underwent two evaluations, but the copy of only one evaluation appears in the record on appeal. The examiner concluded that the defendant did "not suffer from a mental illness" but that "her judgment was undoubtedly impaired at the time of her miscarriage."

The record indicates that the defendant had complied with all of the conditions of her release on bond prior to her guilty plea as well as those additional conditions imposed by the trial court during the 11 months between her guilty plea and the sentencing hearing in this case. The defendant garnered no new criminal charges during this time period.

With regard to the circumstances of the offense, the record establishes that the defendant suffered a miscarriage in the restroom of the Gus's Fried Chicken, where she was working at the time. The defendant, who had experienced the premature birth of her third child, testified that the premature infant was "pretty small" and "gray." The medical examiner could not determine whether the infant had been born alive, and the record clearly establishes that the defendant believed the infant to be dead. The defendant said that she was disoriented, distraught, and in shock when she placed the infant's body in a plastic bag and then placed the bag into the dumpster. She then drove home. Officers later discovered the infant's body in the alley; it had been run over by a car. The record suggests that animals removed the body from the dumpster, and, importantly, no evidence suggests that the defendant was responsible for the damage inflicted on the body after she placed it in the dumpster.

The defendant did not attempt to conceal her pregnancy either before or after the offense. When she went to the hospital for treatment, she told doctors that she had suffered a miscarriage. Then, when contacted by police, the defendant immediately admitted what she had done. She testified that she understood and accepted responsibility for the wrongfulness of her actions. The defendant's version of the offense remained consistent throughout the case.

As mentioned, the trial court indicated that it had performed "outside research" that evinced an exponential increase in "this same type of offense," indicating, perhaps, the need for deterrence to the defendant and others. The trial court's conducting

independent research into facts outside the record and then relying on that evidence was wholly improper. To be sure, a trial court may take into account matters that are of common knowledge to every person but may not "base [its] decisions on the existence or nonexistence of facts according to [its] personal beliefs or experiences." *Fairbanks v. State*, 508 S.W.2d 67, 69 (Tenn. 1974). Our supreme court has explained,

> There is ample authority for the proposition that a judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer outside of the judicial proceedings. Judicial knowledge upon which a decision may be based is not the personal knowledge of the judge, but the cognizance of certain facts the judge becomes aware of by virtue of the legal procedures in which he plays a neutral role. No judge is at liberty to take into account personal knowledge which he possesses when deciding upon an issue submitted by the parties. In other words, "[i]t matters not what is known to the judge personally if it is not known to him in his official capacity."

*Vaughn v. Shelby Williams of Tenn., Inc.*, 813 S.W.2d 132, 133 (Tenn. 1991) (citations omitted). To the extent that the trial court's "independent research" consisted of news reports of "this same type of offense," our supreme court has observed that Rule 201 does not permit a trial judge to take judicial notice of the contents of news articles. *State v. Henretta*, 325 S.W.3d 112, 144 (Tenn. 2010) ("While Rule 201 of the Tennessee Rules of Evidence allows a court to take judicial notice of certain adjudicative facts, it does not allow a court to take judicial notice of hearsay statements contained in a newspaper article."). No evidence in the record supports the trial court's finding of a significant increase in the occurrence of cases similar to the defendant's.

Referencing her "outside research," the trial judge also noted that cases similar to the defendant's had been prosecuted as first degree murder, suggesting that the defendant had been granted some largesse in being permitted to plead guilty to abuse of a corpse. Although this court has previously "recognized that leniency in the terms of a plea agreement may support the imposition of a formidable sentence," we have done so only when the defendant was originally charged with, and the facts supported a finding of, a much greater charge. *State v. John Clayton Fields*, No. M2014-01691-CCA-R3-CD, slip op. at 9-10 (Tenn. Crim. App., Nashville, July 6, 2015), *perm. app. denied* (Tenn. Oct. 23, 2015); *see also, e.g., State v. Krystal Bowman*, No. E2011-01906-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 13, 2012); *State v. Larry J. Coffey, Jr.*, No. E2008-00087-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 18, 2009). In this case, the defendant pleaded guilty to the offense charged in the indictment, and only evidence

to support that offense was placed into the record. Under these circumstances, the trial court should not have considered an offense that the defendant "could" or "should" have faced. *See State v. Chyanne Elizabeth Gobble*, No. E2014-01596-CCA-R3-CD, slip op. at 10-12 (Tenn. Crim. App., Knoxville, Aug. 12, 2015). In *Chyanne Elizabeth Gobble*, this court concluded that "[a] trial court's consideration of an offense different or greater than that for which the defendant was indicted when determining whether the defendant should receive judicial diversion offends the constitutional right to due process." *Id.*, slip op. at 12.

Clearly, the defendant's amenability to correction, her lack of criminal record, her social history, and her physical and mental health all weigh in favor of a grant of judicial diversion. Turning then to the circumstances of the offense, we observe that the seriousness of the offense may serve as the sole basis for denying judicial diversion only when "the circumstances of the offense as committed [are] especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). The evidence established that the defendant suffered a miscarriage and then placed the miscarried infant into a dumpster behind her place of work. The defendant's conduct certainly evinces a serious mistake in judgment, which judgment "was undoubtedly impaired at the time of her miscarriage." As a result of the defendant's poor judgment, the infant's body was dragged from the dumpster and run over by a car. These facts, while unsettling, were already incorporated into the conviction offense. As charged in this case, "[a] person commits an offense who, without legal privilege, knowingly . . . [p]hysically mistreats a corpse in a manner offensive to the sensibilities of an ordinary person." T.C.A. § 39-17-312(a)(1). The record contains no evidence to suggest that the defendant's actions significantly exceeded those required to satisfy the elements of the offense. Furthermore, the defendant's actions following the discovery of the infant, including her ready admission and full cooperation with the police, weigh in favor of a grant of judicial diversion. *See Chyanne Elizabeth Gobble*, slip op. at 15.

Because we conclude, based upon our de novo review of the record, that each of the factors weighs in favor of a grant of judicial diversion in this case, we reverse the judgment of the trial court denying judicial diversion and remand the case for the entry of an order placing the defendant on judicial diversion for one year under the same conditions attendant to the previously-imposed sentence of probation.

_____
JAMES CURWOOD WITT, JR., JUDGE

-9-